No. 24-1855[1]

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

IBRAHIM ALZANDANI

     Plaintiff

and

Y.A., a Minor by Next Friend Ibrahim Alzandani; W.A., a Minor by
Next Friend Nadhem Alnajar; A.M., a Minor by Next Friend Abraham
Muzib

     Plaintiffs-Appellees

v.

HAMTRAMCK PUBLIC SCHOOLS

     Defendant

and

MICHIGAN DEPARTMENT OF EDUCATION

     Defendant–Appellant

---

[1] The official Court of Appeals caption incorrectly names Ibrahim Alzandani as a plaintiff twice and does not include Wayne County Regional Educational Service Agency (WRESA) as a party defendant.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Brandy R. McMillion

# BRIEF OF DEFENDANT-APPELLANT MICHIGAN DEPARTMENT OF EDUCATION

Bryan W. Beach (P69681)
Neil Giovanatti (P82305)
Ticara D. Hendley (P81166)
Marissa Wiesen (P85509)
Assistant Attorneys General
Attorneys for
Defendant-Appellant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
beachb@michigan.gov
giovanattin@michigan.gov
hendleyt1@michigan.gov
wiesenm@michigan.gov

Dated: December 2, 2024

# TABLE OF CONTENTS

Page

Table of Authorities.................................................................................ii

Statement in Support of Oral Argument..................................................v

Jurisdictional Statement.........................................................................1

Statement of Issue Presented .................................................................3

Introduction............................................................................................4

Statement of the Case ............................................................................5

   A. Special education law background....................................................5

   B. District Court proceedings .............................................................7

Standard of Review ...............................................................................11

Summary of Argument...........................................................................12

Argument...............................................................................................14

I.   The District Court erred in determining that Eleventh Amendment immunity is abrogated for Plaintiffs' Title II claims...............................14

   A. The Eleventh Amendment generally provides States the immunity from suit. ..........................................................................................14

   B. Plaintiffs' Amended Complaint fails to identify which aspects of MDE's alleged misconduct violated Title II of the ADA...................16

   C. Plaintiffs have not pled a violation of the Fourteenth Amendment.....................................................................................19

   D. Even if Plaintiffs had pled a Title II claim, MDE's alleged actions are not part of a class of conduct that abrogates Eleventh Amendment immunity because their claim sounds in equal protection principles.........................................................................22

Conclusion and Relief Requested..........................................................25

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. City of Blue Ash,*
798 F.3d 338 (6th Cir. 2015)...................................................... 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................... 20

*Babcock v. Michigan,*
812 F.3d 531 (6th Cir. 2016)................................................ 17, 21, 24

*Bd. of Trs. v. Garrett,*
531 U.S. 356 (2001)................................................................... 17

*Bowers v. Nat'l Collegiate Athletic Ass'n,*
475 F.3d 524 (3d Cir. 2007) ..................................................... 11

*Cartwright v. Garner,*
751 F.3d 752 (6th Cir. 2014)..................................................... 12

*Constantine v. Rectors & Visitors of George Mason Univ.,*
411 F.3d 474 (4th Cir. 2005)..................................................... 11

*D.R. v. Michigan Department of Education,*
No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017)........... 21

*Ex parte Young,*
209 U.S. 123 (1908)................................................................... 16

*Haas v. Quest Recovery Servs.,*
247 F. App'x 670 (6th Cir. 2007) .............................................. 20

*Lawson v. Shelby Cnty., Tenn.,*
211 F.3d 331 (6th Cir. 2000)................................................. 15, 16

*Pennhurst State School & Hosp. v. Halderman,*
465 U.S. 89 (1984)..................................................................... 16

*Popovich v. Cuyahoga Cnty. Ct. of Common Pleas*,
  276 F.3d 808 (2002) ....................................................... 14, 24, 25, 26

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
  411 U.S. 1 (1973) ........................................................................ 23

*Toledo v. Sanchez*,
  454 F.3d 24 (1st Cir. 2006) ........................................................ 11

*United States v. Georgia*,
  546 U.S. 151 (2006) ............................................................. passim

*W.H. by and through M.H. D.R. v. Tenn. Dep't of Educ.*,
  No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016) ............ 11

*Will v. Michigan Dep't. of State Police*,
  491 U.S. 58 (1989) ..................................................................... 15

**Statutes**

20 U.S.C. § 1412 ............................................................................. 6

20 U.S.C. § 1412(a)(1) ..................................................................... 5

20 U.S.C. § 1412(a)(2) ..................................................................... 5

20 U.S.C. § 1412(a)(4) ..................................................................... 5

20 U.S.C. § 1413 ............................................................................. 6

20 U.S.C. § 1415 ............................................................................. 6

Mich. Comp. Laws § 381.1, *et seq* ................................................... 6

**Regulations**

34 C.F.R. § 300.500 ........................................................................ 6

Mich. Admin. Code R. 340.1724f ..................................................... 6

Mich. Admin. Code R. 340.1724f(2) ..........................................................7

Mich. Admin. Code R. 340.1724f(6) ..........................................................7

Mich. Admin. Code R. 340.1724f(7) ..........................................................7

**Constitutional Provisions**

U.S. Const. amend. XI ..............................................................................14

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendant-Appellant Michigan Department of Education (MDE) believes that oral argument will assist this Court in reaching a full understanding of the issues and underlying facts. Accordingly, MDE respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 34(a).

# JURISDICTIONAL STATEMENT

The underlying action involves claims brought under the Individuals with Disabilities Education Act (IDEA), the Americans with Disabilities Act (ADA), and the Rehabilitation Act of 1973. The District Court holds jurisdiction over the underlying action as Plaintiffs raised federal questions. 28 U.S.C. § 1331.

On September 24, 2024, the District Court entered an opinion and order denying MDE's Motion to Dismiss. (Opinion and Order Denying Motions to Dismiss 9/24/24 ("MTD Order"), R. 67, PageID#1326–58.) Relevant to this appeal, the District Court denied MDE's Claim of Sovereign Immunity under the Eleventh Amendment for the claims brought under the ADA. (*Id.* at PageID#1352–53.)

This Court has jurisdiction under 28 U.S.C. § 1291 as the District Court's order denying Eleventh Amendment immunity is considered a "final order." *See Waid v. Earley*, 960 F.3d 303, 322 (6th Cir. 2020); *Guertin v. Mich.*, 912 F.3d 907, 916 (6th Cir. 2019).

The District Court entered its order denying Eleventh Amendment immunity on September 24, 2024. (MTD Order, R. 67.)

MDE filed its Notice of Appeal on October 2, 2024. (Notice of Appeal 10/2/24, R. 69.) *See* Fed. R. App. P. 4(a)(1)(A).

**STATEMENT OF ISSUE PRESENTED**

1. Did the District Court err by finding that MDE's Eleventh
   Amendment immunity is abrogated for the ADA claims raised
   in this case where precedent has held that courts must
   determine on a claim-by-claim basis which aspects of MDE's
   alleged conduct violated Title II of the ADA, and where
   Plaintiffs' claims sound in equal protection-type discrimination
   rather than in due process?

**INTRODUCTION**

The Eleventh Amendment has long shielded states and their agencies from liability absent a particularized exception. This appeal focuses on the District Court's application of one such exception— congressional abrogation. But congressional abrogation is limited to instances in which Congress appropriately exercises its power to abrogate immunity, such as legislation enacted under Section 5 of the Fourteenth Amendment. For claims under Title II of the ADA, the Supreme Court articulated a clear three-part test to be applied to determine if a state's Eleventh Amendment immunity is abrogated for the specific claim before the court.

Relevant to this focused appeal, the District Court did not apply the three-part test articulated in *United States v. Georgia*, 546 U.S. 151 (2006). Instead, it reached the conclusion that Congress abrogated Eleventh Amendment immunity for all Title II claims involving public education without any additional analysis. But the binding precedent from this Court instructs that immunity was not abrogated.

Here, Plaintiffs did not sufficiently plead a Title II claim or a Fourteenth Amendment violation, and this Court's precedent

establishes that Eleventh Amendment immunity is not abrogated for

Title II claims that are based on equal protection principles—rather

than due process rights—like Plaintiffs' claims here.  Accordingly,

MDE's Eleventh Amendment immunity is not abrogated for Plaintiffs'

ADA claim, and the District Court erred in holding otherwise.

## STATEMENT OF THE CASE

### A.    Special education law background

The IDEA provides federal money to assist states in educating

children with disabilities.  To qualify, a State Education Agency (SEA)

establishes federally approved policies and procedures to ensure that all

children with disabilities in the state have access to a Free Appropriate

Public Education (FAPE), in the least restrictive environment, and

tailored to the unique needs of each child by means of an Individualized

Education Program (IEP).  *See* 20 U.S.C. §§ 1412(a)(1), (2), (4).  The

SEA in Michigan is MDE.

As a general matter, the SEA provides general oversight to the

system, and Local Education Agencies (LEAs or school districts) are

responsible for providing the education directly to students.  A LEA

(here, Hamtramck Public Schools or HPS) is eligible for funding under

the IDEA if it submits a plan to the SEA (here, MDE) that ensures (a) the LEA has policies, procedures, and programs in effect providing for the education of children with disabilities within its jurisdiction, consistent with the SEA's policies and procedures, and (b) assures the funds provided will be properly expended. 20 U.S.C. §§ 1412, 1413. In Michigan, there is an entity between the SEA and the LEAs: the Intermediate School District (ISD) (here, Wayne County Regional Educational Service Agency (WRESA)). The ISD ensures the provision of FAPE through their LEAs. Mich. Comp. Laws § 381.1, *et seq*.

Each SEA must also develop and promulgate procedures to ensure that children with disabilities, and their parents, can access procedural safeguards for FAPE's provision; these safeguards include the opportunity for any party to present a due process complaint about the identification, evaluation, or educational placement of the child—or the provision of FAPE. 20 U.S.C. § 1415; 34 C.F.R. § 300.500. Michigan implements and maintains the due process requirements of the IDEA through the procedures set forth in the Michigan Administrative Rules for Special Education (MARSE), Mich. Admin. Code R. 340.1724f. MDE refers filed due process complaints to the administrative hearing

system; then, an independent hearing officer (ALJ) decides the merits of the complaint.  Decisions of the ALJs are subject to review and appeal in federal court.  Mich. Admin. Code R. 340.1724f(2), (6), and (7).

## B.    District Court proceedings

In their First Amended Class Action Complaint (Amended Complaint), Plaintiffs allege that MDE, as the state agency charged with oversight of HPS, "systemically" failed to provide HPS with sufficient funding for (a) identifying children at risk of a disability in fulfillment of the child find mandate and (b) special education services compliant with students' individualized education programs in the least restrictive environment.  (Amended Complaint, R. 46, PageID#535, ¶¶ 25–26.)  Plaintiffs allege that MDE "systemically" failed to (a) ensure compliance with the IDEA and (b) address state complaints regarding HPS.  (*Id.* at PageID#535, ¶¶ 27–28; *see also id.* at PageID#623–27, ¶¶ 230, 242, 251, 253.)

Plaintiffs purport to sue on behalf of children residing within Hamtramck, Michigan, who were, or may be, eligible for special education and related services under the IDEA.  (*Id.* at PageID#540–41, ¶ 38.)  The named Plaintiffs—Y.A., W.A., and A.M.—claim that they

were enrolled students within HPS and require special education. (*Id.* at PageID#536–39, ¶¶ 32–34.)

Relevant here, Count III of the Amended Complaint alleges violations of the ADA. (*Id.*, PageID.635.) This claim contains only scant allegations, broadly alleging that "all Defendants have—through their respective actions and inactions—exercised gross misjudgment and discriminated against Plaintiffs and similarly situated children. . . ." (*Id.* at PageID#635, ¶ 262.)

On February 14, 2024, MDE filed a motion to dismiss the Amended Complaint based on four grounds: (1) that the claims are not ripe for adjudication and administrative remedies were not exhausted; (2) that it failed to state a claim for which relief may be granted; (3) that immunity bars ADA (Count III) and state law claims (Count IV); and (4) a lack of standing to seek injunctive or prospective relief. (*See* MDE's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint 2/14/24, R. 49, PageID#703–77.) Relevant here, MDE argued that dismissal of Count III was warranted because the Amended Complaint fails to allege any conduct by MDE that violated Title II of the ADA or Fourteenth Amendment and thus, Plaintiffs cannot

overcome Eleventh Amendment immunity. (*Id.* at PageID#740–42; *see also id.* at PageID#737–40 (addressing the failure to plead an ADA claim).)

In response to MDE's sovereign immunity arguments, Plaintiffs contended that the Eleventh Amendment immunity is abrogated in the context of public primary education. (Plaintiffs' Response to MDE's Renewed Motion to Dismiss 3/6/24, R. 55, PageID.1034–35.) Plaintiffs further averred that their Amended Complaint has well-pleaded allegations of MDE's purported systemic ADA violations. (*Id.*)

In reply, MDE reiterated that the District Court must determine on a claim-by-claim basis which aspects of MDE's alleged conduct violated Title II of the ADA. (Reply Brief in Support of MDE's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint 3/20/24, R. 61, PageID#1248.) MDE reasoned that public education is not a fundamental right, and the context in which Plaintiffs' claim arises, alone, does not abrogate immunity. (*Id.*)

On September 24, 2024, the District Court issued an opinion and order[2] denying MDE's motion to dismiss on several grounds.  (MTD Order, R.67, PageID#1326–58.)  Relevant to this appeal, the District Court found that Eleventh Amendment immunity was abrogated for Plaintiffs' ADA claim.  (*Id*. at PageID#1352.)  In rendering its finding, the District Court reasoned that the caselaw[3] holding that Eleventh Amendment immunity is abrogated for Title II claims in the context of public education and found it persuasive.  (*Id*. at PageID#1352–53.)  Consequently, the District Court rejected MDE's Eleventh Amendment immunity arguments and denied its motion to dismiss Plaintiffs' ADA claim.  (*Id*.)

---

[2] Defendants WRESA and HPS also filed motions to dismiss Plaintiffs' Amended Complaint.  (*See* HPS's Renewed Motion to Dismiss 2/14/24, R. 51, PageID#780–819; WRESA's Renewed Motion to Dismiss 2/14/24, R. 52, PageID#933–63.)  The district court issued a single opinion and order denying motions to dismiss by Defendants MDE, WRESA, and HPS.  (MTD Order, R. 67.)

[3] Citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 555 (3d Cir. 2007); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005); *W.H. by and through M.H. D.R. v. Tenn. Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016).

On October 2, 2024, MDE filed its Notice of Appeal. (R. 69, PageID#1363–66.)[4] This interlocutory appeal followed.

## STANDARD OF REVIEW

This Court "review[s] de novo the District Court's decision to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Moreover, to the extent the District Court made factual findings in assessing the 12(b)(1) motion, the factual findings are reviewed for "clear error"; whereas "the District Court's application of the law to the facts is reviewed *de novo*." *Id.*

---

[4] On October 4, 2024, MDE filed its motion to certify, requesting that the District Court certify two additional issues for interlocutory appeal: (1) whether allegations of systemic violations excuse compliance with the IDEA's exhaustion requirements and thus render claims against a SEA ripe for judicial review, and (2) how to state a claim against a SEA under the IDEA for alleged denial of Free Appropriate Public Education (FAPE) by a LEA. (MDE's Motion to Certify 10/4/24, R. 71, PageID#1368–94.) On October 7, 2024, MDE filed its motion to stay, seeking a stay of the district court proceedings pending a decision on the motion to certify. (MDE's Motion to Stay 10/7/24, R. 73, PageID#1457–86.) Both motions remain pending.

## SUMMARY OF ARGUMENT

The District Court erred in finding that MDE's Eleventh Amendment immunity is abrogated for the Title II claim in this case. As articulated by the Supreme Court in *Georgia*, courts must determine:

> (1) which aspects of the state's alleged conduct violated Title II of the ADA; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

546 U.S. at 159.

Here, the District Court did not properly consider all three prongs of this test. First, the District Court failed to determine which aspects of MDE's alleged conduct violated the Title II of the ADA. This is important because Plaintiffs' Amended Complaint fails to name any service or programming from which they were excluded or denied benefits by MDE.

As for the second prong, Plaintiffs did not argue that MDE violated the Fourteenth Amendment. Thus, the District Court could not

(and did not) assess whether MDE's purported misconduct amounted to a Fourteenth Amendment violation.

Bypassing these first two criteria, the District Court proceeded directly to the third prong—abrogation—finding that Eleventh Amendment immunity did not apply to MDE in this case. But even if Plaintiffs had sufficiently plead a Title II claim (they did not), this Court's precedent establishes that Eleventh Amendment immunity would not be abrogated because Plaintiffs' Title II claim sounds in equal protection. If the Title II claim seeks to enforce a due process right, Eleventh Amendment immunity may be abrogated, but ADA claims based on equal protection-type discrimination will not. *Popovich v. Cuyahoga Cnty. Ct. of Common Pleas*, 276 F.3d 808, 816 (2002) (en banc).

Accordingly, the Eleventh Amendment bars Plaintiffs' ADA claims.

# ARGUMENT

## I. The District Court erred in determining that Eleventh Amendment immunity is abrogated for Plaintiffs' Title II claims.

To determine whether a Title II ADA claim avoids sovereign immunity, courts must engage in a case-by-case analysis under *United States v. Georgia*, 546 U.S. 151 (2006). The District Court held that the Plaintiffs' claim could proceed, stripping the State of its sovereign immunity, but it did not even attempt to apply *Georgia*'s three-part test. The court's decision should be vacated on that basis alone. And had the District Court properly applied the three-part test, Plaintiffs would be unable to meet any of the three elements. Accordingly, Eleventh Amendment immunity was not abrogated for Plaintiffs' ADA claim. The District Court's error should be reversed.

### A. The Eleventh Amendment generally provides States the immunity from suit.

The Eleventh Amendment provides states and their agencies immunity from suit by private citizens in federal courts. U.S. Const. amend. XI; *Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 334 (6th Cir. 2000). The Supreme Court has recognized only three exceptions to this

rule: (1) congressional abrogation, *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 66 (1989); (2) express consent or waiver by the state, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); and (3) official capacity suits for prospective equitable relief based on ongoing violations of federal law, *Ex parte Young*, 209 U.S. 123, 159–60 (1908). *See also Lawson*, 211 F.3d at 334–35. Here, MDE has not waived sovereign immunity for Plaintiffs' claims under the ADA and there is no official capacity defendant that could implicate the *Ex Parte Young* exception. Accordingly, to the extent Plaintiffs seek to overcome Eleventh Amendment immunity for their ADA claims, they must rely on the congressional abrogation exception.

Congress may abrogate the states' Eleventh Amendment sovereign immunity pursuant to the enforcement provisions of Section 5 of the Fourteenth Amendment when Congress both "unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001) (internal citations omitted). While Congress has expressed a desire to abrogate Eleventh Amendment immunity for violations of the ADA, the Supreme Court has held that such abrogation is only valid in limited

circumstances, depending upon the nature of the ADA claim. *Id.* at 374 (holding that the Eleventh Amendment bars private suits seeking money damages for state violations of Title I of the ADA).

For claims brought under Title II of the ADA, the Supreme Court has held that Congress validly abrogated states' sovereign immunity for Title II claims only in limited circumstances where the state's conduct "actually violates the Fourteenth Amendment." *Georgia*, 546 U.S. at 159; see also *Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016) (determining that plaintiff's failure to identify conduct that violates the Title II is dispositive of her claim under the Eleventh Amendment *Georgia* analysis). As outlined above, the Supreme Court established the three-part test to determine if immunity was abrogated. *Georgia*, 546 U.S. at 159 (outlining three-part, claim-by-claim test).

**B.** **Plaintiffs' Amended Complaint fails to identify which aspects of MDE's alleged misconduct violated Title II of the ADA.**

Plaintiffs' ADA claims do not make it past the first prong of the *Georgia* analysis. They broadly assert that all Defendants violated the ADA "by denying them access to essential services and programming that is available to non-disabled students solely on account of their

disabilities and/or behaviors related to those disabilities . . . ."
(Amended Complaint, R. 46, PageID#635, ¶ 262.)  Plaintiffs further
allege that "MDE has engaged in an ongoing pattern and practice of
systemically failing to address state complaints."  (*Id.* at PageID#535, ¶
28.)  But the Amended Complaint simply failed to identify which
aspects, if any, of MDE's alleged conduct violated Title II.  It failed to
include any specific instances where MDE denied access to services and
programming or failed to address complaints for the Plaintiffs or any
member of the putative class.  Nor did Plaintiffs point to any specific
deficiencies in MDE's general supervisory system for IDEA compliance
implicating Title II.

Moreover, when assessing whether Plaintiffs successfully pled an
ADA claim against MDE, the District Court relied on the single
conclusory allegation that MDE did not provide "professional judgment
in oversight of HPS."  (MTD Order, R. 67, PageID#1350 (internal
citations omitted).)[5]  But this single allegation cannot form the basis of

---

[5] Recognizing the Court's limited jurisdiction for this appeal, MDE does
not directly contest the district court's holding that Plaintiffs stated an
ADA claim and does not seek reversal of that holding.

a valid Title II claim without any additional fact allegations supporting MDE's purported lack of professional judgment in oversight. And while Plaintiffs also broadly allege that MDE failed to comply with its general supervisory responsibilities, the Amended Complaint is devoid of specific facts as to when this occurred, let alone which precise supervisory responsibility MDE failed to comply with. (Amended Complaint, R. 46, PageID#634–35, ¶ 260.) Plaintiffs also failed to allege discriminatory animus required to state a Title II claim. *Anderson v. City of Blue Ash,* 798 F.3d 338, 357 (6th Cir. 2015). ("The [p]laintiff must present evidence that animus against the protected group was a significant factor in the position taken [by defendants.]") (quotation marks and citations omitted). Plaintiffs' Title II claim is thus based on "naked assertions," insufficient to state a claim, and the District Court's finding otherwise should be overturned. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Without identifying any ADA-violating conduct, the District Court erred in determining that MDE is not immune from the alleged Title II ADA violations. (MTD Order, R. 55, PageID#1035–36.) And having failed under the first element of the *Georgia* test, this Court need not

proceed any further.  *Haas v. Quest Recovery Servs.*, 247 F. App'x 670, 672–73 (6th Cir. 2007) (holding that, because the plaintiff "fail[ed] to state a claim under Title II of the ADA," the court "need not reach the remaining prongs of the *Georgia* analysis"); *see also Babcock*, 812 F.3d at 538 ("Without identifying ADA-violating conduct, we cannot hold that Congress abrogated the state's sovereign immunity by a valid exercise of its power under § 5 of the Fourteenth Amendment.")

## C.   Plaintiffs have not pled a violation of the Fourteenth Amendment.

Assuming arguendo that Plaintiffs had identified which aspects of MDE's alleged conduct violated Title II (they did not), they still failed to plead any facts alleging exactly *how* or *why* MDE's purported misconduct also violated the Fourteenth Amendment.  Thus, Plaintiffs cannot meet the second prong of the *Georgia* analysis.  In fact, Plaintiffs' Amended Complaint makes no reference to the Fourteenth Amendment at all.  (*See* Amended Complaint, R. 46.)  And the District Court did not address Plaintiffs' failure to identify how MDE's conduct violated the Fourteenth Amendment, nor did the court analyze how such failure is dispositive of Plaintiffs' ADA claim.

Furthermore, the District Court's cursory reliance on *D.R. v. Michigan Department of Education*, No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017) to support its finding that Eleventh Amendment immunity does not apply to Plaintiffs' ADA claim is misplaced. (MTD Order, R. 67, PageID#1352–53.) To start, *D.R.* is not binding authority as an unpublished District Court opinion. Also, in *D.R.*, the court merely concluded that out-of-circuit caselaw abrogating Eleventh Amendment immunity in the context of higher public education was persuasive. *Id*. at *8. But *D.R.*—like the District Court here—does not cite to any Sixth Circuit precedent establishing abrogation in all cases involving higher public education, nor does this case involve higher education. Moreover, *D.R.*'s broad holding that any Title II case involving public education abrogates Eleventh Amendment immunity ignores the Supreme Court's clear direction to assess each Title II claim on a claim-by-claim basis. *Georgia*, 546 U.S. at 159. There is no support that immunity is abrogated for all claims that arise in a broad subject matter such as public education. For example, it is undeniably possible for a plaintiff to bring a Title II claim against a state or state agency that involves public education in some manner but

fails to allege a Title II or Fourteenth Amendment violation (like the instant case). And based on the holding in *Georgia*, immunity is not abrogated simply because the case involves public education.

Moreover, public education historically is not a protected due process right that would implicate the Fourteenth Amendment. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (holding that public education is not a "right" granted to individuals by the Constitution). Accordingly, simply because a case involves public education does not mean that the Fourteenth Amendment is implicated.

In sum, Plaintiffs have not argued, let alone established, any MDE conduct that violates the Fourteenth Amendment, and the District Court did not assess this element of the *Georgia* test. Without pleading a Fourteenth Amendment violation, Plaintiffs' Title II claims cannot abrogate MDE's sovereign immunity under the Eleventh Amendment. *See Babcock*, 812 F.3d at 539.

**D.** **Even if Plaintiffs had pled a Title II claim, MDE's alleged actions are not part of a class of conduct that abrogates Eleventh Amendment immunity because their claim sounds in equal protection principles.**

Even accepting the District Court's holding that Plaintiffs stated a Title II claim (MTD Order, R. 67, PageID#1349–50), the District Court did not assess if MDE's alleged conduct in this case fell within a class of conduct that validly abrogated Eleventh Amendment immunity under the third element of the *Georgia* test.

This Court previously determined, en banc, that Title II claims sounding in equal protection—as opposed to due process rights—are not a valid abrogation of Eleventh Amendment immunity. *See Popovich*, 276 F.3d at 816. In *Popovich*, a hearing-impaired person brought an action in federal court under Title II against a state court for allegedly failing to provide him with adequate hearing assistance in his child custody case. The plaintiff was awarded money damages based on an equal protection-type claim of discrimination, a due process-type claim of unreasonable exclusion, and a claim of retaliation. *Id*. at 811. The court held that an action is barred by the Eleventh Amendment if the action relies on congressional enforcement of the Equal Protection Clause but is not barred if it relies on congressional enforcement of the

Due Process Clause. *Id.* at 811–15. The court reasoned that Title II of the ADA appropriately enforces the Due Process Clause against states, which Congress has the authority to address under Section 5 of the Fourteenth Amendment. *Id.* at 815. In contrast, and consistent with *Garrett*, claims sounding in equal protection do not abrogate immunity as equal protection claims based on disability discrimination only give rise to a rational basis review. *Id.* at 813 (citing *Garrett*, 531 U.S. at 366).

In the instant case, Plaintiffs' ADA claims are clearly based on equal protection principles. The Amended Complaint alleges that they did not receive essential services and programs that may be available to non-disabled students. (Amended Complaint, R. 46, PageID#635, ¶ 262.) In other words, Plaintiffs have alleged that MDE treated them differently, or unequally, compared to non-disabled students. But they have not alleged any facts that they were denied due process of law. Thus, Plaintiffs' ADA claim sounds in an equal protection-type discrimination rather than in due process.

Accordingly, consistent with *Popovich*, even if Plaintiffs adequately pled a Title II claim, Eleventh Amendment immunity is not abrogated. *Popovich*, 276 F.3d at 811.

**CONCLUSION AND RELIEF REQUESTED**

For the reasons set forth above, MDE asks this Court to vacate the District Court's decision denying its motion to dismiss as to Count III of the Amended Complaint and remand for entry of an order dismissing the ADA claim against MDE on the basis of Eleventh Amendment immunity.

Respectfully submitted,

*/s/ Ticara D. Hendley*
Bryan W. Beach (P69681)
Neil Giovanatti (P82305)
Ticara D. Hendley (P81166)
Marissa Wiesen (P85509)
Assistant Attorneys General
Attorneys for
Defendant-Appellant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI  48909
(517) 335-7603
beachb@michigan.gov
giovanattin@michigan.gov
hendleyt1@michigan.gov
wiesenm@michigan.gov

Dated:  December 2, 2024

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding

the part of the document exempted by Federal Rule of Appellate

Procedure 32(f), this brief contains no more than 13,000 words.  This

document contains 4,034 words.

2.     This document complies with the typeface requirements of

Federal Rule of Appellate Procedure 32(a)(5) and the type-style

requirements of Federal Rule of Appellate Procedure 32(a)(6) because

this document has been prepared in a proportionally spaced typeface

using Word 2013 in 14-point Century Schoolbook.

/s/ Ticara D. Hendley
Bryan W. Beach (P69681)
Neil Giovanatti (P82305)
Ticara D. Hendley (P81166)
Marissa Wiesen (P85509)
Assistant Attorneys General
Attorneys for
Defendant-Appellant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI  48909
(517) 335-7603

## CERTIFICATE OF SERVICE

I certify that on December 2, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*/s/ Ticara D. Hendley*
Bryan W. Beach (P69681)
Neil Giovanatti (P82305)
Ticara D. Hendley (P81166)
Marissa Wiesen (P85509)
Assistant Attorneys General
Attorneys for
Defendant-Appellant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
beachb@michigan.gov
giovanattin@michigan.gov
hendleyt1@michigan.gov
wiesenm@michigan.gov

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendant-Appellant, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Amended Class Action Complaint | 1/23/24 | R. 46 | PageID#527–699 |
| Defendant MDE's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint | 2/14/24 | R. 49 | PageID#703–777 |
| Defendant HPS's Renewed Motion to Dismiss | 2/14/24 | R. 51 | PageID#780–819 |
| Defendant WRESA's Renewed Motion to Dismiss | 2/14/24 | R. 52 | PageID#933–963 |
| Plaintiffs' Response to MDE's Renewed Motion to Dismiss | 3/6/24 | R. 55 | PageID.1001–1040 |
| Opinion and Order Denying Motions to Dismiss ("MTD Order") | 9/24/24 | R. 67 | PageID#1326–1358 |

| | | | |
|---|---|---|---|
| Defendant MDE's Notice of Appeal | 10/2/24 | R. 69 | PageID#1363–1366 |
| Defendant MDE's Motion to Certify | 10/4/24 | R. 71 | PageID#1368–1394 |
| Defendant MDE's Motion to Stay | 10/7/24 | R. 73 | PageID#1457–1486 |

# EXHIBIT A

2017 WL 4348818
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, Southern
Division.

D.R. et al., Plaintiffs,
v.
MICHIGAN DEPT. OF ED., et al., Defendants.

Case No. 16-13694
|
Signed 09/29/2017

**Attorneys and Law Firms**

Daniel S. Korobkin, Kary L. Moss, Michael J. Steinberg, American Civil Liberties Union Fund of Michigan, Detroit, MI, David G. Sciarra, Jessica Alexandra Levin, Education Law Center, Newark, NJ, Kristin Totten, Totten and Rucker, PLLC, Kalamazoo, MI, Lindsay M. Heck, Gregory G. Little, White & Case LLP, New York, NY, for Plaintiffs.

Katherine J. Bennett, Timothy J. Haynes, Michigan Department of Attorney General, Travis M. Comstock, Michigan Attorney General, Lansing, MI, John L. Miller, Timothy J. Mullins, Giarmarco, Mullins & Horton, P.C., Troy, MI, Brett J. Miller, Donald B. Miller, Frederick A. Berg, Butzel Long, Detroit, MI, for Defendants.

**Order Denying Defendant MDE's Motion to Dismiss [23]; Denying Defendant GISD's Motion for Judgment [25]; Granting in Part and Denying in Part Defendant FCS's Motion to Dismiss [22]**

Arthur J. Tarnow, Senior United States District Judge

**\*1** Plaintiffs filed a class action civil rights action against Defendants Flint Community Schools (FCS), Genesee Intermediate School District (GISD), and Defendant Michigan Dept. of Ed. (MDE) on October 18, 2016. They alleged systemic violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*; discrimination based on disability in violation of § 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C.

§ 794; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*; and violations of M.C.L. § 380.1701.

Defendants FCS and MDE filed Motions to Dismiss on December 8, 2016 [22, 23], and Defendant GISD filed a Motion for Judgment [25] on December 15, 2016. Defendants FCS and MDE filed replies [32, 33] on January 3, 2017. Plaintiff responded [29] to these Motions on January 13, 2017. Defendant GISD filed a reply [31] on January 27, 2017. A hearing was held on these Motions on August 23, 2017.

For the reasons stated below, Defendant MDE's Motion to Dismiss [23] and Defendant GISD's Motion for Judgment [25] are **DENIED without prejudice**. Defendant FCS's Motion to Dismiss [22] is **GRANTED in part** as to Defendant's request to dismiss the claim for universal preschool, and **DENIED in part** as to the remainder of Defendant FCS's Motion to Dismiss.

**Background**

The proposed class is made up of the approximately 30,000 school-age children in Flint, Michigan at risk of developing a disability as a result of the elevated levels of lead in the drinking water. Against all Defendants, Plaintiffs bring claims of systemic violations of the Individuals with Disabilities Education Act (IDEA), specifically alleging: failure to develop and implement child find procedures; failure to provide free appropriate public education that confers a meaningful educational benefit in the least restrictive environment; failure to protect students' due process procedural safeguards in the disciplinary process; discrimination on the basis of disability and denial of access to educational services. Plaintiffs also allege that all Defendants have discriminated based upon disability in violation of § 504 of the Rehabilitation Act (§ 504) and in violation of Title II of the Americans with Disabilities Act (ADA). As to Defendants FCS and GISC only, Plaintiffs allege violation of MCL § 380.1701 as a result of a failure to provide programs and services designed to develop each disabled child to their maximum potential. The individual facts pertaining to the representative Plaintiffs are found in the complaint at ¶¶ 90-348.

Plaintiffs' claims are all focused around requirements established by the IDEA. The IDEA provides federal money to help states educate children with disabilities. To qualify for this assistance, a state education agency (SEA) must demonstrate that it has policies and procedures in place that assure all children with disabilities in the state have access to a free appropriate public education (FAPE) in the least restrictive environment (LRE), tailored to the unique needs of each child through an individualized education program (IEP). *See* 20 U.S.C. § 1412(a)(1), (2), (4). The LRE is defined as follows: "[t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).

**\*2** The IDEA also provides that "[a] State funding mechanism shall not result in placements that violate the [LRE requirements], and a State shall not use a funding mechanism by which the State distributes funds on the basis of the type of setting in which a child is served that will result in the failure to provide a child with a disability a free appropriate public education according to the unique needs of the child as described in the child's IEP." 20 U.S.C. § 1412(a)(5)(B).

### Legal Standard

Defendants MDE and FCS move to dismiss the complaint under Rules 12(b)(6) and 12(b)(1). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to provide fair notice to the defendant of what the claim is and the grounds upon which it rests. The Court must construe the complaint in the light most favorable to the Plaintiff and draw all reasonable inferences in the plaintiff's favor. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012). The complaint must plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

It is currently unsettled in the Sixth Circuit whether a failure to exhaust administrative remedies is properly considered under Rule 12(b)(6) or Rule 12(b)(1). *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 Fed.Appx. 423, 431 (6th Cir. 2016). However, the Sixth Circuit has indicated that the distinction makes no difference in cases where there is no dispute as to the exhaustion-related factual findings. *See id.* Since it is undisputed that Plaintiffs did not exhaust, the Court will use the 12(b)(6) standard to resolve the exhaustion claims.

Rule 12(b)(1) mandates dismissal for "lack of jurisdiction over the subject matter." *Damnjanovic v. United States Dep't of Air Force*, 135 F. Supp. 3d 601, 603 (E.D. Mich. 2015). Whether Article III's case or controversy requirement is satisfied is a jurisdictional issue to be considered under Rule 12(b)(1).

Defendant GISD brings its Motion to Dismiss under Rule 12(c). "Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same *de novo* standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

### Analysis

Defendant FCS brings a Motion to Dismiss [22] on the basis of failure to exhaust, asserting there is no case or controversy regarding hearing, vision, or lead blood screenings that are already provided through the public health department; and that there is not a valid claim for universal preschool. Defendant GISD brings a Motion for Judgment [25], based

upon a failure to exhaust, and further claims that Plaintiffs' state law cause of action is barred because Michigan does not recognize claims that sound in medical malpractice. Finally, Defendant MDE brings a Motion to Dismiss [23], based upon a failure to exhaust, 11th Amendment immunity for the ADA claim, lack of standing, and a failure to state a claim for which relief may be granted.

### 1. Failure to Exhaust [22, 23, 25]

**\*3** All Defendants argue that Plaintiffs' claims must be dismissed for failure to exhaust administrative remedies as required under the IDEA. Plaintiffs respond that exhaustion is not required because it would be futile in this case since the alleged systemic violations of IDEA cannot be remedied through the administrative process. As an initial point, these arguments were made prior to the United States Supreme Court's decision in *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 197 L.Ed. 2d 46 (2017), which held that plaintiffs must exhaust in suits brought under statutes other than the IDEA if the remedy sought addresses the denial of a FAPE. While no supplemental briefs have been submitted that address the relevance of this decision on the exhaustion argument, the complaint unequivocally concerns the alleged failure to provide a FAPE, and therefore the exhaustion requirement of § 1415(l) still applies to all claims, as originally argued by Defendants.[1]

It is clear from the plain language of the IDEA that exhaustion of administrative remedies is required before a party may file a suit under the act in federal court. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). The two principle exceptions to this requirement of exhaustion of administrative remedies are where the administrative procedures "would be futile or inadequate to protect the plaintiff's rights," or where "plaintiffs were not given full notice of their procedural rights under the IDEA." *Id.* at 917. Courts have applied the futile or inadequate exceptions to exhaustion when plaintiffs seek relief that is not otherwise available through the administrative process, *i.e.* allegations of "structural or systemic failure." *Jackie S. v. Connelly*, 442 F. Supp. 2d 503, 518 (S.D. Ohio 2006) (citations omitted).

It is undisputed that Plaintiffs have not properly exhausted, and that they were given actual notice of the procedural

rights. However, Plaintiffs argue that the systemic exception applies to excuse their lack of exhaustion.[2] While the Sixth Circuit has not expressly adopted this exception, nor explicitly defined the futility exception for systemic claims, courts around the country have accepted this excuse with varying parameters. *See Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997) (systemic claim involves allegations concerning system-wide issues requiring wholesale structural reform); *see also J.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004) (plaintiffs alleged system-wide problems when the "framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.").

**\*4** Plaintiffs direct the Court to three cases they believe support the conclusion that they should be excused from exhaustion for alleging systemic violations. In the first case, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004), the plaintiffs were found to have alleged systemic violations under the IDEA. In that case, the Court surveyed applicable precedent and concluded that the common element in systemic cases was that:

> [T]he plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.

*Id.* at 114. Importantly, "[i]f each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results," and the administrative record would not have been of "substantial benefit" to the Court. *Id.* Therefore, the Second Circuit panel found that the plaintiffs' challenges to the School District's failures to: prepare and implement IEPs, provide appropriate training to staff, perform timely evaluations and reevaluations, provide parents with procedural safeguards related to identification and evaluation of children with disabilities, and perform legally mandated responsibilities in a timely matter, represented systemic allegation because the challenge was not to the individual IEPs of the various plaintiffs, but rather

to the School District's "total failure to prepare and implement [IEPs]." *Id.* at 115.

This case was factually similar to the pending matter. Here, Plaintiffs are seeking systemic relief in the form of injunctive relief on behalf of a large class. The challenge is to the very framework and processes that the school district undertakes for every child, rather than individuals contesting their IEPs. The Court agrees with the logic in *J.S.* that challenges such as these are incapable of correction in the individual administrative exhaustion procedure, and instead, are of a systemic nature that is properly addressed by the Court.

The remaining two cases proffered by Plaintiffs to support their position are recent decisions by district courts in this circuit: *W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016); and *N.S. v. Tennessee Dep't of Educ., Knox Cty. Bd. of Educ.*, No. 3:16-CV-0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016). Motions to dismiss were denied in both because the Court found that the plaintiffs had alleged systemic violations rendering exhaustion futile.

*W.H.* concerned allegations that the school district and the SEA "denied LRE placements and placed [plaintiffs] in more segregated settings than necessary." *W.H.*, 2016 WL 236996, at *2. *N.S.* challenged the misuse and overuse of isolation and restraint techniques on children with disabilities. *N.S.*, 2016 WL 3763264 at *1.

In these cases, the courts considered the allegations to be systemic because the plaintiffs were not requesting that the court individually determine the plaintiffs' educational needs, the very subject of an administrative review; but rather, were raising the question of whether the School District, in meeting the plaintiffs' educational needs, employed practices that caused the plaintiffs to be placed in more restrictive environments than necessary. *Id.* at *10. These claims were distinct from the local-level evaluation of the plaintiffs' individual needs, as demonstrated by the fact that the plaintiffs were not seeking individual relief, but rather, injunctions mandating systemic reforms to the school district policies and practices. *Id.*

**\*5** Thus, in *N.S.*, the Court held that the plaintiffs were challenging systemic violations because the complaint contained:

> ... specific examples of actions taken by the defendants (the use of "time out" terminology to replace "isolation" at the local level, instructions not to collect certain types of data at the state level), specific incidents that should have made the defendants aware of a problem (publicized events involving the use of "timeouts," a disproportionate number of incidents of isolation and restraint in KCS as compared to other school districts), evidence that the problem is widespread (although there are only two plaintiffs, they attended a number of schools throughout KCS), and specific state statutory mandates that the defendants have allegedly failed to uphold....

*Id.* This established the systemic nature of the claims, and further placed Defendants on notice that systemic problems were on-going within the School District and subject to broad-based legal challenge. *Id.*

In this case, Plaintiffs seek systemic change within the School District's policies to ensure compliance with state and federal law. The complaint alleges four systemic violations: failure to develop and implement child find procedures; failure to provide a free appropriate public education that confers a meaningful educational benefit in the least restrictive environment; failure to protect students' procedural due process protections in the disciplinary process; and discrimination on the basis of disability with accompanying denial of access to educational services.

Similar to *N.S.*, Plaintiffs here have alleged specific facts relating to incidents and publicized statistics showing disproportionate incidents of suspension of students with IEPs, thus providing the proof of similar allegations in the complaint. For example, the complaint states, "[i]n 2014-2015, 13.59% of special education students in FCS were suspended or expelled for more than ten days-more than five times the statewide suspension/expulsion rate of 2.48%." Compl. at ¶ 80. Additionally, Plaintiffs identify specific incidents that have occurred broadly across FCS, also

lending credence to the application of the systemic exception here.

Defendants argue that they should have a chance to address these problems in the context of administrative proceedings. However, they do not explain how these allegations concerning the very core of the manner that the School District functions on a daily basis, implementing state and federal law could successfully be resolved in an administrative context. Further, because the class contains all children in the School District, the time required for all of those affected to seek and obtain administrative consideration would be prohibitive and punitive.

Defendants also fail to demonstrate how the record of the administrative proceedings would benefit the Court in this case, yet another factor favoring a decision that these claims fall under the systemic exception to the exhaustion requirement. At the hearing, Defendant FCS conferred with individuals that were in the Courtroom, including the distributor of learning support services, and indicated that there have been two students who taken up administrative appeals. This does not support an argument that exhaustion is readily available, or that the system is functioning properly, and instead points to systematic problems given the facts alleged in the complaint surrounding the representative Plaintiffs and the high percentage of children in FCS qualifying under IDEA for IEPs.

**\*6** Defendants also argue that because the complaint only alleges violations by FCS, and does not concern purported state-wide violations, the claims cannot be characterized as systemic in nature. *See* 🚩 *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1305 (9th Cir. 1992). However, the decision is not as persuasive as decisions from the 3rd Circuit, 2nd Circuit, and 10th Circuit. *See* 🚩 *M.A. v. State Operated Sch. Dist. of Newark,* 344 F.3d 335, 343 (3d Cir. 2003); 🚩 *Jose P. v. Ambach,* 669 F.2d 865, 869-70 (2d Cir. 1982); 🚩 *New Mexico Ass'n for Retarded Citizens v. N.M.,* 678 F.2d 847, 851 (10th Cir. 1982). Moreover, the violations challenged here pose a unique risk to children in FCS, requiring IEPs addressing prolonged lead exposure. Therefore, the Court concludes that these claims are unique to the FCS, and that it is difficult to understand how a statewide systemic violation could exist, since the dangerously polluted water exists as a systematic threat only to the children of the Flint community.

It is clear from Plaintiffs' complaint that the remedy they are seeking is a systemic change in the very way that Defendants identify, place, and educate all children in the Flint School District. The relief they are seeking is plainly not individual and could not be remedied by individual exhaustion since Plaintiffs are challenging the very efficacy of the system employed within the Flint District. Further, the representative Plaintiffs have emphatically illustrated that the alleged violations are widespread across the Flint schools and repetitive in nature. Thus, these systemic violations cannot be adequately exhausted through the administrative procedure and the systemic violation exception applies.

## 2. Standing to Bring Case Against MDE Under IDEA, Title II and § 504 [23]

Defendant MDE argues that, as against MDE, Plaintiffs cannot establish an injury in fact, causation, or redressability. First, Defendant MDE argues that the claims asserted against it, *i.e.* that they failed to provide the appropriate monitoring, oversight, resources, and expertise required to help the local Defendants comply with the IDEA, are merely procedural and therefore not actionable under the IDEA. *See* 🚩 *D.S. v Bayonne Bd. of Educ.,* 602 F.3d 553, 565 (3d Cir. 2010) (citing 🚩 *Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516, 525-26 (2007)). A procedural violation of the IDEA is actionable "if it results in a loss of educational opportunity ... or causes a deprivation of educational benefits." 🚩 *D.S. v Bayonne Bd. of Educ.,* 602 F.3d 553, 565 (3d Cir. 2010). Plaintiffs' complaint contains many specific allegations that MDE's failure to monitor and ensure that adequate remedial services are timely provided has caused a loss of educational opportunity and deprivation of educational benefits. Therefore, the court finds Defendant's argument unpersuasive.

Defendant also cites authority purportedly establishing that there is no standing here because they were never placed on notice that each child was not receiving a FAPE. However, the cases that Defendant cites are not binding and deal with a failure to exhaust. Since the failure to exhaust has been excused, these cases are inapposite.

Defendant further argues that Plaintiffs have merely raised generalized complaints, has failed to establish causation, and

does not state a separate, redressable injury, since redressability is dependent on other actors, including the local Defendants and parents. To the contrary, the complaint contains many specific alleged violations of IDEA, § 504, and the ADA. These allegations also demonstrate injuries in fact occurring as a result of these violations. Specifically, it is alleged that MDE failed to provide the local Defendants with sufficient funding and support to enable it to meet the requirements of the IDEA. It is also alleged that their monitoring was inadequate.

**\*7** As to the asserted causation requirement, there is no need to allege direct causation to establish standing. Rather, a plaintiff's injuries must be "fairly traceable" to the defendant's actions. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). An indirect injury does not destroy standing. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 713 (6th Cir. 2015). In this case, the complaint presents allegations of injury caused by the failure of MDE to fulfill its critical statutory obligations under IDEA, § 504, and the ADA, to the children it is responsible for. Considering its direct role in monitoring and ensuring compliance with the IDEA, the alleged injuries are unquestionably the result of Defendant MDE's actions. *See Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) (SEA "may be responsible for violations of the IDEA when the state agency in some way fail[s] to comply with its duty to assure that the IDEA's substantive requirements are implemented," including "systemic violation" of the state's IDEA responsibilities).

Finally, as to the argument that the injuries are not redressable because the relief depends on other actors to establish standing, Plaintiffs are not required to show that a favorable decision will correct all of the injuries alleged, but rather, that a favorable decision is likely to establish at least a partial redress. *See Parsons*, 801 F. 3d at 716. The requested relief seeks an order requiring MDE to fulfill its obligations to identify and evaluate all children requiring special education through enhanced screening processes, and to provide them with a FAPE, ensuring that IEPs are implemented, and developing effective training and systems to ensure proper disciplinary procedures. It is clear that a favorable ruling on these claims would provide at least a partial redress to the injuries alleged. Moreover, since the local Defendants are parties to this case, there is no argument

that other actors, not before the Court, would affect redressability. As for the parents, they have joined in the lawsuit, and there is no reason to believe that their presence would hinder redressability either.

Defendants also argue that Plaintiffs lack standing for the § 504 and ADA claims because they have failed to allege an injury under these acts, as not every proposed member of the class is necessarily disabled and eligible for services under the ADA or § 504. It is asserted that this "hypothetical" injury is not sufficient to establish standing. *See Whitmore v Arkansas*, 495 U.S 149, 155 (1990). However, this argument ignores the many class members who *are* currently disabled. There is no argument requiring a finding of a lack of standing for these Plaintiffs, and Defendant does not address this argument in its reply. Considering the above, Plaintiffs have standing to bring the IDEA, ADA, and § 504 claims against Defendant MDE.

### 3. 11th Amendment Immunity Bars ADA Claim Against Defendant MDE [23]

Defendant MDE argues that it has Eleventh Amendment immunity as to the ADA claim. "Congress has expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA." *Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016). When determining whether the 11th Amendment applies for violations of the ADA, Courts are instructed to:

> [D]etermine ... on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006).

Defendant focuses on the first part of this test that requires the Court to determine "which aspects, if any, of the Defendants' alleged conduct violated Title II." *Id.* at 535. It

contends that Plaintiffs have failed to state a claim under Title II of the ADA, and thus immunity must apply.

**\*8** As Plaintiffs point out, the Sixth Circuit has not yet ruled on whether the 11th Amendment is abrogated in the context of public education. However, Plaintiffs correctly point to many other circuits that have found state immunity was abrogated in the context of higher public education. *See, e.g.,* *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 555 (3d Cir. 2007); *Toledo v. Sanchez,* 454 F.3d 24, 40 (1st Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474 (4th Cir. 2005); *W.H.,* 2016 WL 236996. In these cases, courts have abrogated 11th Amendment immunity in the context of public education, and applied their reasoning to a claim concerning primary education, seeing no reason why the reasoning in higher education cases should not equally apply to the primary education context.

Defendants have offered no binding or persuasive authority in which a court has held that state immunity is not abrogated in the context of public education. Rather, they proffer a case in which the Court found that there was not a valid ADA claim stated, and ended its analysis there. *Babcock,* 812 F.3d at 534-35. As a result, the court did not rule on the issue of whether the Eleventh Amendment barred Title II claims. Therefore, the Court is not persuaded to disregard the significant case law abrogating 11th Amendment immunity in the cases concerning public education. Accordingly, 11th Amendment immunity does not apply to Plaintiffs' ADA claim.

### 4. Failure to State a Claim

#### a. IDEA

Defendants MDE and GISD first argue that Plaintiffs have not stated a valid IDEA claim, asserting first that they have failed to exhaust their claims (an argument resolved above), while also arguing that the claims are too vague, merely containing broad, conclusory allegations. However, Plaintiffs have pled valid claims in their detailed challenges to the policies and practices of the Defendants in a complaint that runs over 130 pages, and have included specific examples

illustrating these allegations through the representative Plaintiffs.

Plaintiffs allege that Defendant MDE: "failed to provide necessary resources (Compl. at ¶¶ 4, 16, 365); failed to ensure its public schools complied with IDEA, as required of Defendant by the statute (¶¶ 35, 42, 50, 381); failed to monitor and enforce child-find procedures, as required of Defendant by the IDEA (¶¶ 41, 350); failed to correct FCS and GISD's ongoing pattern of not providing procedural safeguards nor the expertise and resources required for FCS / GISD to do so themselves (¶ 381); and failed to ensure districts provide a FAPE for Plaintiffs and all similarly situated students with disabilities" (¶ 388). [29 at 52-53]. These allegations are detailed and address claims specific to each Plaintiff, showing that this is a common occurrence across the school district, impacting many children.

Plaintiffs further assert that: "GSID failed to address sensory and behavioral needs of students in GISD-run schools (¶ 129); failed to provide special education services and evaluation for students with disabilities even when frequently prompted by concerned parents (¶¶ 278, 328, 333, 334, 370); failed to apprise parents of contemplated behavior controlling techniques nor sought their permission for such actions (¶ 130); failed to assess the extent of lead exposure when conducting reevaluations (¶ 134); failed to screen and issue timely referrals pursuant to IDEA's child-find requirements (¶ 364); failed to provide procedural safeguards for students with disabilities (¶ 381); engaged in a pattern of unduly harsh disciplinary measures, including physical restraints and seclusion techniques in violation of IDEA (¶ 381); failed to provide students with disabilities the same variety of programs and services offered to non-disabled students (¶ 384); and failed to provide a FAPE to Plaintiffs and similarly situated students with disabilities" (¶ 394). [29 at 53-54]. These specific allegations put Defendants on notice as to the factual basis for the complaint and satisfies the 12(b)(6) standard.

#### b. Title II ADA and § 504 Claims

**\*9** Defendant MDE argues that Plaintiffs have not alleged Title II ADA and § 504 claims because: some of the class members are not disabled; there is only a disagreement over

the level of services provided, not a denial of access; and there is no discriminatory animus plead, which is fatal under Title II. Defendant MDE further alleges that the claims are too vague and conclusory to be sustained.

The sufficiency of Plaintiffs' ADA and § 504 claims will be evaluated together. *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008). To state a valid claim under both statutes, Plaintiff must demonstrate that:

> (1) The plaintiff is a 'handicapped person' under the Act; (2) The plaintiff is 'otherwise qualified' for participation in the program; (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*Campbell v. Bd. of Educ. of the Centerline Sch. Dist.*, 58 Fed. Appx. 162, 165 (6th Cir. 2003).

In this Circuit, in the context of FAPE claims, a mere disagreement in FAPE is not sufficient to show discrimination; rather, discriminatory intent must be established by "bad faith or gross misjudgment" in the context of disabled children. *Campbell*, 58 Fed.Appx. at 167; *see also* *G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013).

Plaintiffs have alleged that: "they are not entitled to receive the same variety of programs made available to nondisabled children, (Compl. at ¶¶ 108, 110, 112, 123, 125-26, 184, 209, 259, 261, 301, 384, 387, 391); lack of disability identification repeatedly causes unnecessary segregation and seclusion from the general education environment, (¶¶ 108-10, 144, 148-49, 151, 177, 184, 209, 243, 273, 290, 301-02); children with disabilities are repeatedly sent home and/or suspended, without the proper documentation required when suspending or sending home Plaintiffs' nondisabled peers," (¶¶ 110, 143, 254). [29 at 57].

It is undisputed that there are disabled Plaintiffs. Plaintiffs also allege that children are not being properly assessed and evaluated, so they may well be able to establish that even

more are disabled. Again, Defendants fail to show why the fact that some of the class members may not be disabled should cause the entire claim to be dismissed.

Defendants are correct that a mere failure to provide the FAPE as required by the IDEA is insufficient to support a § 504 or Title II ADA claim. However, Plaintiffs have challenged MDE's professional judgment in oversight of the FCS, and the allocation of necessary resources, and asserted that this has caused discriminatory effects. Whether this judgment rises to the level of gross misjudgment, to qualify as discriminatory, is a question of fact that needs to be developed and brought before a trier of fact to determine. Therefore, as a threshold matter, Plaintiffs have stated a valid claim under § 504 and the ADA.

### 5. Plaintiff's State Law Claim is not for Educational Malpractice

Defendant GISD argues that Plaintiffs' state law claim is one for "educational malpractice," and as such, is barred, citing decisions that refuse to accept state-law negligence claims "in which a public school is alleged to have failed to adequately instruct a student in basic academic skills." *Page v. Klein Tools, Inc.*, 610 N.W. 2d 900, 903 (Mich. 2000). However, the cases cited by Defendant GISD all alleged negligent instruction, and sought monetary damages. Plaintiffs here bring a claim under M.C.L. § 380.1711(1)(h)m, which addresses the responsibility to oversee and coordinate special education. In *Woolcott v. State Bd. of Educ.*, 351 N.W.2d 601 (Mich. App. 1984), the Court held that students may have a cause of action under M.C.L. § 380.1701, *et seq.*, for declaratory and injunctive relief. Therefore, Defendant's argument is not valid.

### 6. Standing to Sue for FCS Failure to Conduct Appropriate Screenings

**\*10** Defendant FCS contends that Plaintiffs lack standing as to their declaratory and injunctive request seeking hearing, vision, and lead blood testing, because the screenings are currently offered by the county health department. Because these tests are mandated by the Michigan Public Health Code, M.C.L. § 333.9301, which meets the "full individual evaluation" requirements under the IDEA (20 U.S.C. §

1414; 34 C.F.R. § 300.304(c)(4); 34 C.F.R. § 300.301(a)), Defendant argues that there is no case or controversy as to this claim, since there is no injury that would be redressed in the case of a favorable outcome for that claim.

As explained at the hearing, these screenings are not presented in all of the schools in the School District. Considering the fact that every child in the School District is exposed to the dangers of lead in the water, the presence of these tests in a few schools is not equivalent to the relief Plaintiffs are requesting, that children at all schools in FCS have access to these screenings. Therefore, this claim for relief will not be dismissed.

**7. Universal Preschool Claim**

Finally, Defendant FCS argues that the Court should dismiss under Fed. R. Civ. P. 12(b)(6) the claim seeking universal preschool, because only the state legislature can create such a program, and there is no legal requirement under any of the statutes which Plaintiffs have invoked that provide for this relief. *See* Michigan Constitution, Article 8, Section 2 ("[t]he legislature shall maintain and support a system of free public elementary and secondary schools as defined by law.").

Plaintiffs do not respond to any of the arguments presented by Defendant, merely stating in a footnote that the "provision of early interventions including universal preschool is an essential remedy to fulfill Defendants' obligations regarding child find and the provision of FAPE." There is no showing that this Court has the power to order the creation of public universal preschool. *See, e.g.,* 🚩 *Leandro v. State*, 346 N.C. 336, 357, 488 S.E.2d 249, 261 (1997) ("[T]he administration of the public schools of the state is best left to the legislative and executive branches of government."). Therefore, this claim for relief is dismissed.

Accordingly,

**IT IS ORDERED** that Defendant MDE's Motion to Dismiss [23] and Defendant GISD's Motion for Judgment [25] are **DENIED**.

**IT IS FURTHER** ORDERED that Defendant FCS's Motion to Dismiss [22] is **GRANTED in part** as to Defendant's request to dismiss the claim for universal preschool and

**DENIED in part** as to the remainder of Defendant FCS's Motion to Dismiss.

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4348818

---

### Footnotes

[1]     At the end of the hearing, Defendant FCS argued that the *Fry* decision mandated exhaustion if the complaint concerned a FAPE, seemingly arguing that because of this decision, Plaintiffs must exhaust and cannot be excused. There is nothing to suggest that the Supreme Court in *Fry* did away with exceptions to exhaustion in cases concerning a FAPE. The issue decided in that case considered artful pleading of claims concerning a FAPE under statutes other than IDEA, in order to avoid the exhaustion requirement. There was no discussion of exceptions to exhaustion, and certainly no indication that the case had any impact on existing and established case law surrounding exceptions to exhaustion under IDEA.

[2]     Plaintiffs also rely upon an emergency exception. This exception has never been recognized by the Sixth Circuit, or any district courts within the circuit. Further, the interpretations of such an exception by other courts suggest that the facts of this case would not justify a finding of an emergency exception because of the evidence before the Court. *See, e.g.,* 🚩 *Rose v. Yeaw*, 214 F.3d 206, 212 (1st Cir. 2000) (citation omitted) (requiring plaintiffs to provide evidence that the child faces irreversible damage if the relief is not granted). Plaintiffs merely state that the ongoing water crisis is an emergency that is "certain to cause Plaintiffs severe and irreparable harm if they are not able to seek relief now." [29 at 25]. While the Court acknowledges and appreciates the severity of the situation in Flint, the conclusory nature of this pleading and argument does not support an emergency exception.

---

**End of Document**                                  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

W.H. by and through M.H. D.R. v. Tennessee Department..., Not Reported in Fed....

2016 WL 236996

KeyCite Yellow Flag - Negative Treatment

Distinguished by T.D. v. Rutherford County Board of Education, M.D.Tenn., January 9, 2017

2016 WL 236996
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee, Nashville Division.

W.H., a minor student, BY AND THROUGH his parents (M.H. and D.R.); J.A., a minor student, by and through his parents (S.A. and M.A.); and J.B., a minor student, by and through his parents (J.B. and S.B.), Plaintiffs,

v.

TENNESSEE DEPARTMENT OF EDUCATION and Knox County Schools, Defendants.

Case No. 3:15-1014
|
Filed 01/20/2016

**Attorneys and Law Firms**

Jessica F. Salonus, Gilbert Russell Mcwherter PLC, Jackson, TN, Justin S. Gilbert, Gilbert Russell McWherter PLC, Franklin, TN, for Plaintiffs.

Michael Markham, Tennessee Attorney General's Office, Nashville, TN, Amanda Lynn Morse, Susan E. Crabtree, Knoxville, TN, for Defendants.

**MEMORANDUM**

ALETA A. TRAUGER, United States District Judge

**\*1** Pending before the court are three motions: 1) a Motion for Change of Venue filed by the defendant Knox County Schools ("KCS") (Docket No 12), to which the defendant Tennessee Department of Education ("TDOE") has filed a Response in Opposition (Docket No. 13), and the plaintiffs have also filed a Response in Opposition (Docket No. 18); 2) a Motion to Dismiss filed by TDOE (Docket No. 16), to which the plaintiffs have filed a Response in Opposition (Docket No. 20), and TDOE has filed a Reply (Docket No. 25); and 3) a Motion to Dismiss by KCS (Docket No. 28), to which the plaintiffs have filed a Response in Opposition (Docket No. 29). For the reasons discussed herein, the motions will be denied.

**BACKGROUND & PROCEDURAL HISTORY**

The plaintiffs are minors who reside in Knox County, Tennessee and attend public primary schools that are within the KCS system and overseen by TDOE. Each of the plaintiffs has a pervasive disability that entitles him or her to specialized educational services under the federal Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (the "IDEA"), including a free appropriate public education ("FAPE"), an individualized education program ("IEP"), and placement in the least restrictive environment ("LRE"). 20 U.S.C. § 1412. These rights are also guaranteed under Tennessee law. Tenn. Comp. R. & Reg § 0520-01-09 (adopting by reference the federal regulations contained in 34 C.F.R. §§ 300-301). The LRE is defined as follows: "To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A). The IDEA further provides that "[a] State funding mechanism shall not result in placements that violate the [LRE requirements], and a State shall not use a funding mechanism by which the State distributes funds on the basis of the type of setting in which a child is served that will result in the failure to provide a child with a disability a free appropriate public education according to the unique needs of the child as described in the child's IEP." 20 U.S.C. § 1412(a)(5)(B).

On September 21, 2015, the plaintiffs commenced this action against KCS and TDOE (Docket No. 1) and, on September 30, 2015, the plaintiffs filed an Amended Complaint, which is the current operative pleading (the "Complaint") (Docket

W.H. by and through M.H. D.R. v. Tennessee Department..., Not Reported in Fed....

2016 WL 236996

No. 4). The Complaint raises causes of action under three separate federal statutes: 1) the IDEA; 2) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title II"); and 3) Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 ("Section 504").

**\*2** The gravamen of the Complaint is that the plaintiffs—along with other KCS students with disabilities—have been denied LRE placements and placed "in more segregated settings than necessary, often in highly segregated 'separate' schools" (Docket No. 4, p.4) due to the following systemic practices by the defendants: 1) TDOE's protocol for allocating funding to KCS (and other local educational agencies), for the education of students with disabilities, provides financial incentives to KCS to place students with disabilities in more restrictive environments than necessary, in violation of the IDEA's LRE requirement; 2) KCS, in order to benefit from these funding incentives and due to prevailing bias in favor of more restrictive environments, routinely funnels students with disabilities into more restrictive environments than necessary, rather than considering alternative options such as supplemental services in a general education classroom, again in violation of the LRE requirement; and 3) KCS utilizes software to develop IEPs for students with disabilities in a way that misleads students and parents into believing that less restrictive placement options are not available when, in fact, they are. The Complaint further alleges that TDOE is aware that its current funding structure provides financial incentives that cut against its federally mandated objective of ensuring LRE placements for children with disabilities but has failed to take any measures to change these practices.

The Complaint seeks the following relief: 1) injunctive relief, seemingly to enjoin the defendants from continuing practices that prevent proper consideration of LRE placements for students with disabilities; 2) damages under Section 504 and Title II related to prior denials of LRE placements for the plaintiffs, based on these practices; and 3) attorneys' fees and costs.

On October 19, 2015, KCS filed a Motion to Dismiss and For Change of Venue (Docket No. 12), which 1) sought dismissal under Rule 12(b)(1) for the alleged naming of improper parties and insufficient service of process, and 2) sought to transfer the action to the United States District

Court for the Eastern District of Tennessee under 28 U.S.C. § 1404(a). On the same day, TDOE filed a Response in Opposition to KCS' Motion to Change Venue. (Docket No. 13.)

On October 26, 2015, TDOE filed its own Motion to Dismiss (Docket No. 16) along with a Memorandum in Support (Docket No. 17), arguing: 1) that all claims against TDOE should be dismissed due to the plaintiffs' failure to administratively exhaust the claims, as required by 20 USC § 1415 of the IDEA; 2) that the Title II and Section 504 claims against TDOE should be dismissed under 12(b)(6) for failure to state a claim; and 3) that the Title II claim for monetary damages against TDOE should be dismissed under Rule 12(b)(1) due to lack of subject matter jurisdiction because TDOE is entitled to Eleventh Amendment immunity with respect to that claim.

On November 2, 2015, the plaintiffs filed a Response to KCS's Motion to Dismiss And For Change of Venue. (Docket No. 18.) On November 5, 2015, the plaintiffs filed a Response in Opposition to TDOE's Motion to Dismiss. (Docket No. 20.)

On November 6, 2014, pursuant to the parties' stipulation, the court denied as moot KCS's first Motion to Dismiss—the motion arguing that there were improper parties and insufficient service of process—but reserved judgment on KCS's Motion for Change of Venue, which was brought in the same filing. (Docket No. 21.)

On December 22, 2015, KCS filed a second Motion to Dismiss, this time echoing two of the legal grounds raised in TDOE's pending Motion to Dismiss—1) failure to exhaust administrative remedies under the IDEA and 2) failure to state a claim with respect to the Section 504 and Title II claims—and incorporating by reference the TDOE's arguments contained therein. (Docket No. 28.)

On December 23, 2015, the plaintiffs filed a Response to KCS' Motion to Dismiss. (Docket No. 29.)

## **ANALYSIS**

## I. Motion for Change of Venue

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). In ruling on a motion to transfer venue, a district court should consider case-specific factors, such as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Express, Inc.,* 929 F.2d 1131, 1136-37 (6th Cir. 1991)); accord *Kerobo*, 285 F.3d at 557.

**\*3** The Sixth Circuit has suggested that relevant factors to consider include: 1) the convenience of the parties and witnesses; 2) the accessibility of evidence; 3) the availability of process to make reluctant witnesses testify; 4) the costs of obtaining willing witnesses; 5) the practical problems of trying the case most expeditiously and inexpensively; and 6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). The moving party bears the burden of establishing that these factors weigh in favor of transferring venue. *See, e.g., Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573; *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 097 (M.D. Tenn. 1996). Ordinarily, "unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese*, 574 F.3d at 320 (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)) (emphasis added).

KCS' motion for transfer of venue is premised, initially, on its argument that, because the plaintiffs do not reside within the Middle District of Tennessee, the court should not defer to their choice of forum. KCS is correct that, when plaintiffs do not reside in their chosen forum, their choice should be given less weight than would otherwise be the case. The court notes, however, that KCS has cited cases where there

was no connection whatsoever between the action and the plaintiff's choice of forum as illustrations of situations where the plaintiff's choice of forum was successfully outweighed by other interests. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) (affirming dismissal on *forum non conveniens* grounds where the plaintiff was not a resident of the forum, "nor did any event connected with the case take place there, nor does any witness with the possible exception of experts live there."); *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 852 (S.D. Ohio) ("On the whole, the factors identified by Plaintiff do not demonstrate a connection with this matter to Ohio."); *Ozark Entm't, Inc. v. Wilson*, No. 3:09-cv-0195, 2009 WL 4884445, at *2 (M.D. Tenn. Dec. 10, 2009) ("The court finds that although the Plaintiffs' choice of forum carries significant weight, the fact that there is no (or, at most, a very limited) connection to this forum requires that Plaintiffs' choice be given diminished weight.").

In this action, on the other hand, there is a significant connection to the Middle District of Tennessee, as one of the defendants and many of the potential witnesses are located here, and at least some of the events giving rise to the action took place here. Moreover, although the court may give slightly *less* weight to the plaintiffs' choice of forum because the plaintiffs do not reside here, this does not mean that the plaintiffs' choice should be given *no* weight; nor does it negate the defendant's burden to demonstrate that other factors weigh in favor of transfer. *See Ajose v. Interline Brands, Inc.*, No. 3:14-cv-1797, 2015 WL 5773080, at *3 (M.D. Tenn. Sept. 30, 2015) ("Perhaps Defendant's most compelling argument is that the Plaintiffs' forum choice should receive deference because Plaintiffs have no ties to the Middle District of Tennessee....Yet the absence of deference does not alone defeat the Plaintiffs' forum choice; Defendant still bears the burden on a Section 1404(a) motion.").

KCS has asked this court to transfer venue to the Eastern District of Tennessee, but—even putting aside the deference due to the plaintiffs' choice of forum—KCS has failed to meet its burden of showing that the balance of the factors weighs in favor of such transfer. As an initial matter, not only is the Middle District of Tennessee the plaintiffs' choice of forum, it is also the preferred forum of TDOE. Of the three parties to this matter, then, it is only one party that favors the Eastern District of Tennessee over the Middle District.

Further, while KCS has correctly pointed out that a significant portion of the events giving rise to this action took place in Knox County, where the plaintiffs reside and attend school (namely, actions related to developing the plaintiffs' IEPs and determining their educational placements), still other events giving rise to this action appear to have taken place in Nashville (namely, actions related to setting TDOE's funding policies). Not only is TDOE primarily located in Nashville, the state capital, but it appears that TDOE officials working out of the Nashville office are responsible for setting the TDOE funding structure that is challenged as a central issue in this case. Accordingly, considering the location of events giving rise to the action, as well as convenience of all parties, there are factors weighing in favor of both the Middle District and the Eastern District, but there is not a tipping of the scales in favor of the Eastern District.

**\*4** KCS' strongest argument in favor of transfer to the Eastern District involves the convenience of non-party witnesses located in Knox County and the ability of the court to reach these witnesses by subpoena. KCS has not, however, actually named any particular witnesses or alleged any specific facts to support the argument that any necessary witness to the action would be unreasonably inconvenienced by having to attend trial in the Middle District or would be outside of the court's subpoena power. KCS has only raised the general argument that witnesses will include board members, administrators, and other employees of KCS, all of whom are located in Knox County. The court recognizes that it is highly likely that KCS agents will be called as witnesses in this action and the court also acknowledges that it would likely be more convenient for them to testify in court in the Eastern District than the Middle District. However, KCS has not offered any evidence, aside from the distance between Knox County and Nashville, to show that this inconvenience would be so substantial or significant as to tip the scales in favor of relocating the locus of this lawsuit.

Knox County is only a three hour drive from Nashville and is within the state. Moreover, under Rule 45, these witnesses— who are employees of a party to the action—are likely subject to the subpoena power of this court, as it is within the state of Tennessee, where they are employed. *See* Fed. R. Civ. P. 45(c)(1)(B) ("A subpoena may command a person to attend a trial, hearing, or deposition...within the state where

the person resides, is employed, or regularly transacts business in person, if the person is a party or a party's officer; or is commanded to attend a trial and would not incur substantial expense.") KCS has certainly provided no evidence to the contrary, including any evidence of substantial expense for potential witnesses who are not officers of KCS, and the mere inconvenience associated with calling these individuals to Nashville to testify is not sufficient to outweigh the other factors in favor of keeping the case in the Middle District. Accordingly, KCS' request to transfer venue will be denied.

## II. Motions to Dismiss

There are two Motions to Dismiss pending before the court, which raise overlapping issues. Both defendants argue that all claims against them should be dismissed for failure to exhaust under the IDEA and that, in the alternative, the Section 504 and Title II claims against them should be dismissed for failure to state a claim under Rule 12(b)(6). TDOE additionally argues that the claims against TDOE for monetary damages under Title II should be dismissed on the grounds of Eleventh Amendment immunity for state defendants. The court will address each of these arguments in turn.

### A. Exhaustion

Under the IDEA, state educational agencies—such as TDOE—are required to provide administrative impartial due process hearings for students challenging any matter relating to their receipt of a FAPE, including placements in alternative educational settings and LRE requirements. 20 U.S.C. § 1415(b)(6)(f)-(g); 20 U.S.C. § 1415(b)(6)(k). While the IDEA provides for a private right of action for these matters as well, it requires that plaintiffs first exhaust the administrative procedures. 20 U.S.C. § 1415(i); *see also S.E. v. Grant Cnty Bd. of Educ.,* 544 F.3d 633, 642 (6th Cir. 2008). The Sixth Circuit has held that the rationale behind this exhaustion requirement is that "the IDEA gives the 'primary responsibility...for choosing the education method most suitable to the child's needs...to state and local educational agencies in cooperation with the parents or guardian of the child.' The federal courts are not the entities best equipped to craft an IEP or remedial substitutes. They

W.H. by and through M.H. D.R. v. Tennessee Department..., Not Reported in Fed....

2016 WL 236996

are, instead, suited to reviewing detailed administrative records, such as those that would be furnished through due process hearings...under the IDEA." *Long v. Dawson Springs Indep. Sch. Dist.,* 197 Fed.Appx. 427, 433-34 (6th Cir. 2006) (quoting *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley,* 458 U.S. 176, 207 (1982)); *see also Frye v. Napoleon Cmty. Schs.,* 788 F.3d 622, 626 (6th Cir. 2015) (holding that the IDEA "calls for a highly fact-intensive analysis of a child's disability and her school's ability to accommodate her" and that the administrative exhaustion procedures "ensure that the child's parents and educators, as well as local experts, are first in line to conduct this analysis").

**\*5** The exhaustion requirement for claims brought under the IDEA applies with equal force to claims brought under Section 504 and Title II that arise from the same misconduct that allegedly violates the IDEA. 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subjections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.") (emphasis added) (internal citations omitted); *see also Frye,* 788 F.3d at 625.

Administrative exhaustion of these claims, however, is not required "when it would be futile or inadequate to protect the plaintiff's rights." *Donoho ex rel. Kemp v. Smith Cnty. Bd. of Educ.,* 21 Fed.Appx. 293 (6th Cir. 2001) (citing *Covington v. Knox Cnty. Sch. Sys.,* 303 F.3d 912, 915 (6th Cir. 2000); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n,* 873 F.2d 933, 935 (6th Cir.1989)); *see also Honig v. Doe,* 484 U.S. 305 (1988) (holding that a claim under the predecessor statute to the IDEA could proceed in federal court without prior administrative exhaustion where such exhaustion would be futile).

While the court is not aware of a Sixth Circuit case that explicitly defines futility in this context, or one that specifically holds that requiring the administrative exhaustion of a claim challenging systemic practices would

be futile, the court finds that it would clearly be futile for the plaintiffs in this action to attempt to exhaust their particular claims regarding the defendants' systemic practices through state administrative procedures. First, the state is a defendant in this action and has an interest in upholding, rather than changing, its current practices. Moreover, the express purpose behind the administrative exhaustion requirement— the ability to review educational placements at the local level—does not apply to the issues in this action. The plaintiffs are not asking the court to conduct a thorough review of all aspects of the plaintiffs' educational needs. Rather, they are raising the very pointed question of whether—in meeting those needs—particular systemic practices, namely the promulgation and consideration of improper financial incentives within the framework of allocating state funding for the plaintiffs' education, caused the plaintiffs to be placed in more restrictive environments than necessary, contrary to federally mandated LRE requirements.[1] The plaintiffs are challenging practices that occur across the school district and the state at a meta-level, practices that are removed from the local-level evaluation of students' actual abilities and determination of services needed. The court does not require a full administrative record regarding the plaintiffs' disabilities and recommended services—matters that do not appear to be at issue in this action—in order to answer this question. This is different from the kinds of claims at issue in the cases cited above, in which the Sixth Circuit found that exhaustion was required. *See Long,* 197 Fed.Appx. 427, 433-34 (requiring exhaustion where the complaint alleged a failure by the school district to implement the plaintiff's IEP and provide her with sufficient educational services); *Frye* (requiring exhaustion where the plaintiff was challenging an individualized decision forbidding her to bring her service dog to school).

**\*6** In addition, the Second Circuit has held that challenges to systemic practices—like the claims at issue here—are not subject to the IDEA's exhaustion requirement. *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 114-15 (2d Cir. 2004) (acknowledging "the importance of exhaustion in 'textbook' cases presenting issues involving individual children where the remedy is best left to educational experts operating within the framework of the local and state review procedures" but holding that exhaustion was not required because the claims did not challenge the content of the

W.H. by and through M.H. D.R. v. Tennessee Department..., Not Reported in Fed....

2016 WL 236996

individual IEP but, instead, challenged the school district's failure to prepare and implement IEPs on a wide-scale basis along with other systemic oversights involving proper notifications to parents and training of staff). The Second Circuit declined to require state administrative exhaustion in *J.S. ex rel. N.S.*, even though the state agency itself was not named as a defendant but only the local agency was. In the instant action, where the state agency is also a defendant and its practices are expressly at issue, there is even more reason to find that state administrative exhaustion would be futile. The court is swayed by the logic of the Second Circuit and the facts of this case to find that exhaustion should not be required here.

The defendants argue that the plaintiffs should be required to exhaust because they are seeking only relief that pertains to the individual educational placements of the plaintiffs themselves, which is exactly the type of relief anticipated by the IDEA-mandated state administrative proceedings. This reading of the plaintiffs' claims, however, is simply not consistent with the Complaint itself. While it is true that the monetary damages sought by the plaintiffs relate only to their individual placements, the injunctive relief they seek includes changes to systemic practices that would potentially have an impact on students with disabilities throughout KCS, as well as the state of Tennessee, including: 1) mandatory changes to the TDOE funding structure to eliminate financial incentives that undermine LRE placements; 2) the enjoining of KCS from considering improper financial incentives in making placement determinations or placing children with disabilities in more restrictive environments than necessary solely for the purpose of diverting funds allocated for children with disabilities to other areas; and/or 3) changes to KCS' process for developing IEPs that would ensure the availability of LRE placement options are appropriately understood and considered by families of children with disabilities and others participating in the decision-making process.

For these reasons the court will not require the plaintiffs to exhaust administrative procedures before proceeding with their claims and will not dismiss any of the claims on this ground.

## B. Failure to State a Claim Under Title II and Section 504

The defendants argue, in the alternative, that the plaintiffs' claims under Title II and Section 504 should be dismissed under Rule 12(b)(6) because the plaintiffs have failed to adequately plead all elements of these claims.

### *1. Legal Standard Under Rule 12(b)(6)*

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### *2. Application to Title II and Section 504 Claims*

W.H. by and through M.H. D.R. v. Tennessee Department..., Not Reported in Fed....

2016 WL 236996

**\*7** Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States.[.]. shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...". Title II is nearly identical, with the exception of covering even public services that are not funded by federal financial assistance. 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." As discussed above, the IDEA expressly provides that plaintiffs may bring a private right of action for denial of a FAPE under Title II and Section 504, as well as under the IDEA itself. 20 U.S.C. § 1415(i); *see also Campbell v. Bd. of Educ. of Centerline Sch. Dist.,* 58 Fed.Appx. 162, 166 (6th Cir. 2003) ("Generally, the [IDEA], as amended 20 U.S.C. §§ 1400– 20, informs a Rehabilitation Act discrimination claim which is buttressed by allegations that a public school district failed to appropriately accommodate a handicapped student's extraordinary educational needs.").

The Sixth Circuit has held, however, that in order to succeed on a Section 504 claim in this context, "more harm is required than a denial of [FAPE]." *N.L. ex rel. Mrs. C. v. KCS Cnty Schools,* 315 F.3d 688, 695 (6th Cir. 2003). In particular, the Sixth Circuit has held that, in addition to proving the denial of a FAPE under the IDEA, "the Rehabilitation Act *further requires* that the [plaintiff] must ultimately prove that the defendant's failure to provide [the plaintiff] with a [FAPE] was *discriminatory*. Surmounting that evidentiary hurdle requires that either *bad faith or gross misjudgment* must be shown before a 504 violation can be made out, at least in the context of the education of handicapped children." *Campbell,* 58 Fed.Appx. at 167(emphases added) (internal citations omitted); *see also Hill v. Bradley Cnty Bd. of Educ.,* 295 Fed.Appx. 740, 742 (6th Cir. 2008) (holding that there was no Section 504 violation where there was no allegation of "deliberate indifference," which the court defined as "more than a collection of sloppy, or even reckless, oversights"). The Sixth Circuit has expressly held that this element of discriminatory intent applies as well to Title II claims in the education context and that " '[a]part from [Section 504's]

limitation to denials of benefits "solely" by reason of disability and its reach of only federally funded—as opposed to "public"—entities, the reach and requirements of both statutes are precisely the same." *S.S. v. Eastern Ky. Univ.,* 532 F.3d 445, 452-53 (6th Cir. 2008) (quoting *Weixel v. Bd. of Educ. of N.Y.,* 287 F.3d 138, 146 n. 6 (2d Cir. 2002).

The defendants argue that the plaintiffs have pled only the elements of an IDEA claim, and not pled violations of Section 504 or Title II, by alleging that the defendants have failed to provide them with a FAPE through required LRE placements. According to the defendants, the plaintiffs have not alleged anything related to the additional element of discriminatory intent necessary to plead a Section 504 or Title II claim. The court disagrees with this overly narrow reading of the Complaint. By alleging that TDOE and KCS have implemented the systemic practices named in the Complaint, despite being aware of their adverse impact on the ability of students with disabilities to receive the LRE placements to which they are entitled, the plaintiffs have certainly provided sufficient allegations to support an inference of discriminatory intent that would allow these claims to proceed. The implications of the Complaint allow for the possible inference that KCS intentionally places children in more restrictive environments in order to use TDOE funding that should be allocated for students with disabilities and redirects it toward other funding goals, ostensibly discriminating against students with disabilities in favor of non-disabled students, and that TDOE—knowing of the issue—either encourages this or grossly overlooks it. Although the plaintiffs concede that the primary intention of TDOE's resource-based funding structure is to "promote equity in funding, providing more funding for greater costs" (Docket No. 20, p. 6 n.5), this does not undermine the plaintiffs' allegations that TDOE knowingly executes this funding structure in a manner that provides improper incentives for local agencies to deny students with disabilities their federal right to an LRE placement. The element of discriminatory intent, as laid out by the Sixth Circuit, does not require malice by TDOE, or a subjective intent to harm students with disabilities, but only a gross misjudgment that has a discriminatory effect. Whether such misjudgment has occurred is a question that should be left to the trier of fact to determine.

W.H. by and through M.H. D.R. v. Tennessee Department..., Not Reported in Fed....

2016 WL 236996

**\*8** It is clear that the plaintiffs may have a difficult burden to actually prove this additional element of discriminatory intent to a trier of fact, but it is equally clear that the plaintiffs have put forth enough of a foundation in the Complaint that they should have the opportunity to further develop the record and proceed with these causes of action. Accordingly, the court will not dismiss the Title II or Section 504 claims under Rule 12(b)(6).

### C. TDOE's Eleventh Amendment Immunity Under Title II

Lastly, TDOE argues that the plaintiffs' claim for monetary damages under Title II should be dismissed because TDOE is entitled to Eleventh Amendment immunity for this claim. As a practical matter, this argument is likely of little import, since the plaintiffs would, in any case, be entitled to the same monetary damages under Section 504, and any claim for damages under Title II would be duplicative.[2]

With respect to state immunity under Title II, the ADA provides as follows:

> A state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

🚩 42 U.S.C. § 12202. The Supreme Court has held that, while this provision evidences Congressional *intent* to abrogate states' Eleventh Amendment immunity from Title II claims, the constitutionality of Congress' ability to abrogate—a power that is derived from the Fourteenth Amendment of the United States Constitution—remains an open question, and the lower courts must decide on a case-by-case basis to what extent such abrogation is constitutional and can be enforced in order to allow Title II claims against state defendants to proceed. 🚩 *U.S. v. Georgia*, 546 U.S. 151, 154 (2006). In *Georgia*, the Supreme Court instructed the lower courts that any alleged misconduct that violates both Title II and a plaintiff's constitutional rights under the Fourteenth Amendment can proceed under Congressional abrogation of immunity but that courts must determine, "insofar as such misconduct violated Title II but did *not* violate the Fourteenth Amendment, whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." 🚩 *Id.* at 159 (emphasis added).

The possibility that abrogation may be enforceable with respect to claims that do not involve Fourteenth Amendment violations appears to refer to prior Supreme Court precedent explaining that, where there has been a history of constitutional violations in a particular area and Congress has enacted legislation that is congruent with, and proportional to, those violations, such legislation may be enforceable against the states, even to the extent that the legislation regulates conduct not proscribed by the Constitution. *See* 🚩 *Tennessee v. Lane*, 541 U.S. 509 (2004). After *Georgia*, it does not appear that the Sixth Circuit has analyzed the question of whether abrogation of immunity for Title II claims is enforceable in the context of claims that do not involve constitutional violations and arise in the area of public education.[3] The circuits that have considered this question post-*Georgia*, have reached the conclusion that abrogation is valid for such claims, even where there is no Fourteenth Amendment violation at issue. *See* 🚩 *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 555 (3d Cir. 2007) (holding that immunity was abrogated with respect to a Title II claim involving a disabled student's access to a sports program at a public institution of higher education because, "as applied to education, Title II is a congruent and proportional means of preventing and remedying the unconstitutional discrimination that Congress found to exist both in education and in other areas of governmental services, many of which implicate fundamental rights"); 🚩 *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006) (holding that abrogation applied to a claim for failure to reasonably accommodate a disabled university student and stating that "Title II, as it applies to the class of cases implicating the right of access to public education, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment"); 🚩 *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) (abrogating immunity for a Title II claim involving

denial of accommodations for college student with a medical condition); *Assn'n for* 🚩 *Disabled Americans v. Fla. Int'l Univ.,* 405 F.3d 954, 959 (11th Cir. 2005) (holding that abrogation applied to a Title II claim involving denial of sign language interpreters for a college student and stating "[t]he relief available under Title II of the ADA is congruent and proportional to the injury and the means adopted to remedy the injury"); *see also* 🚩 *Dean v. Univ. at Buffalo School of Medicine and Biomedical Sciences,* 804 F.3d 178, 195 n. 9 (2d Cir. 2015) (declining to rule on this issue, but noting that the other circuits to do so have held that abrogation is valid).

**\*9** In the absence of express guidance from the Sixth Circuit, the court is swayed by these other circuits' holdings and finds that there is no reason to differentiate the analysis with respect to the right to public *primary* education. Accordingly, even though the plaintiffs have alleged no constitutional violation, the court finds that, under *Georgia*, 🚩 Section 12202 validly applies to abrogate the defendants' Eleventh Amendment immunity with respect to the plaintiffs' Title II claim for monetary damages, and this claim will not be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, KCS' Motion for Change of Venue will be denied and KCS' and TDOE's Motions to Dismiss will be denied.

An appropriate order will enter.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 236996

## Footnotes

[1]    The court notes, significantly, that the plaintiffs do not appear to argue that they should be placed in the best possible educational environment, irrespective of resources and budgeting issues. Instead, they argue that, to the extent TDOE is providing funding to KCS that has been allocated for the plaintiffs' education, it should be used to make the LRE placement within the range of available options, given these other constraints, and students with disabilities should not be placed in more restrictive environments than necessary simply to reap a financial gain for KCS.

[2]    The Sixth Circuit has held—without even reaching the constitutionality of Congress' abrogation of Eleventh Immunity for Section 504 claims (⚑ 42 U.S.C. 2000d-7(a)(2)—that immunity does not apply Section 504 because a violation of this statute requires a state defendant to have received federal funding and, therefore, "[s]tates waive their Eleventh Amendment immunity with regard to Rehabilitation Act claims when they accept federal funds." *Nihiser v. Ohia E.P.A.,* 296 F.3d 626, 628 (6th Cir. 2001). Indeed, TDOE does not challenge the plaintiffs' right to monetary damages under Section 504.

[3]    The defendants have cited the Sixth Circuit's opinion in 🔖 *Carten v. Kent State Univ.* (282 F.3d 391 (6th Cir. 2002)) to argue that the Sixth Circuit has addressed this question and held that Eleventh Amendment immunity is not abrogated with respect to claims under Title II involving access to public education. (Docket No. 25, p. 5.) This, however, does not appear to be a fair interpretation of *Carten,* which—in addition to having been decided before *Lane* and *Georgia*—does not appear to have actually considered the exact question now before the court. Instead, the only question before the Sixth Circuit in *Carten* was whether a right to public education is a fundamental right that is protected under the Fourteenth Amendment, which the court answered in the negative. There was no serious consideration given to the alternate ground for abrogation to apply where Congress acted proportionally and congruently with a history of constitutional violations.

**End of Document**        © 2024 Thomson Reuters. No claim to original U.S. Government Works.