# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

IBRAHIM ALZANDANI

*Plaintiff*

Y.A., a Minor by Next Friend Ibrahim Alzandani; W.A., a Minor by Next Friend
Nadhem Alnajar; A.M., a Minor by Next Friend Abraham Muzib

*Plaintiffs-Respondents*,

v.

HAMTRAMCK PUBLIC SCHOOLS, WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY, AND MICHIGAN DEPARTMENT OF
EDUCATION,

*Defendants-Petitioners*.

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 2:23-cv-12817 Hon. Brandy R. McMillion

## BRIEF OF PLAINTIFFS – APPELLEES
## IN RESPONSE TO APPELLANT MICHIGAN DEPARTMENT OF
## EDUCATION

Respectfully submitted,
HAMMOUD, DAKHLALLAH
& ASSOCIATES, PLLC
By: */s/ Kassem M. Dakhlallah*
Kassem M. Dakhlallah (P70842)
Tarik D. Turfe (P83690)
Counsel for Plaintiffs-Respondents
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

Dated: January 10, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ................................. iv

STATEMENT OF THE CASE .......................................................................1

    I.      HAMTRAMCK PUBLIC SCHOOLS ......................................1

    II.     DISTRICT COURT POSTURE .........................................4

STANDARD OF REVIEW ............................................................................4

SUMMARY OF THE ARGUMENT ..............................................................4

ARGUMENT .................................................................................................7

    I.      THE DISTRICT COURT DID NOT ERR IN DENYING
    MDE'S ELEVENTH AMENDMENT ARGUMENT ...........................7

    A.    MDE'S VIOLATIONS OF TITLE II OF THE ADA ....................7

    B.    FOURTEENTH AMENDMENT VIOLATIONS .........................8

    C.    ABROGATION OF ELEVENTH AMENDMENT IMMUNITY IS
    PROPER IN THIS CASE .....................................................11

CONCLUSION .......................................................................................13

CERTIFICATE OF COMPLIANCE .............................................................14

CERTIFICATE OF SERVICE.......................................................................14

**TABLE OF AUTHORITIES**

**CASES**

*Abington School District v. Schempp*,
   374 U.S. 203, 230, 83 S.Ct. 1560, 1575, 10 L.Ed.2d 844
   (1963) (BRENNAN, J., concurring) …………………………..…………9

*Ambach v. Norwick*,
   441 U.S. 68, 99 S. Ct. 1589, 60 L. Ed. 2d 49 (1979) …………………….……9

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
   475 F.3d 524, 555 (3d Cir. 2007). ……………..………………..………6, 12

*Constantine v. Rectors & Visitors of George Mason Univ.*,
   411 F.3d 474 (4th Cir. 2005). …………………………………….…………12

*D.R. v. Mich. Dep't of Educ.*,
   No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017)………..5, 12

*Goss v. Lopez*,
   419 U.S. 565 (1975)………………………….………………………10, 11

*Jones v. City of Lakeland, Tennessee*,
   224 F.3d. 518 (6th Cir. 2000) …………………………….………..………4

*Meyer v. Nebraska*,
   262 U.S. 390, 400 (1923) …………………………………………..………9

*Plyler v. Doe*,
   457 U.S. 202 (1982)………………………….………………..…………8, 9, 10

*San Antonio Independent School Dist. V. Rodriguez*,
   411 U.S. 1 (1973) …………………….……………………….…6, 8

*S.J. v. Hamilton County*,
   374 F.3d 416, 418 (6th Cir. 2004). ……………………….…………4

*Toledo v. Sanchez*,
   454 F.3d 24, 40 (1st Cir. 2006) …………………………………………..12

*United States v. Georgia,*
    546 U.S. 151 (2006), ………………………………….....…4, 5, 6, 7, 11

*Wisconsin v. Yoder*,
    406 U.S. 205, 221, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15 (1972) …..….…9, 10

## CONSTITUTIONAL AMENDMENTS

U.S. Const. amend XI …………………………………………….4, 5, 6, 7, 11, 12, 13

U.S. Const. amend XIV………………………………………………5, 6, 8, 10, 11

## STATUTES

20 U.S. § 1400 et seq.…………………………………………………1, 2, 3

29 U.S.C. § 794 ……………………………………………………1, 3

42 U.S.C. § 12131 ……………………………………………………1, 3

MCL 380.1701 ………………………………………………..…….....1

## REGULATIONS

Mich. Admin. Code. R. 340.1701 et seq.…………………...………………3

34 C.F.R. § 300.600 et seq.…………………………...………………3

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs-Appellees believe that oral argument will assist this Court in reaching a full and complete understanding of the underlying facts and legal issues in this matter. Accordingly, Plaintiffs-Appellees respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 34(a).

# STATEMENT OF THE CASE

## I.    HAMTRAMCK PUBLIC SCHOOLS

At issue in this case is whether special needs students who receive inadequate special education services plead a plausible claim for relief under federal and state laws requiring such services. This is a class action civil rights lawsuit, brought pursuant to federal and state law, to vindicate the rights of all Hamtramck Public Schools' ("HPS") students with disabilities who have received inadequate special services. These children require special services that comply with the mandates of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") (Count I), 20 U.S. § 1400 et seq.; § 504 of the Rehabilitation Act of 1973 ("Section 504") (Count II), 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA") (Count III), 42 U.S.C. § 12131 *et seq.* (Count III); and the Michigan Mandatory Special Education Act ("MMSEA"), Mich. Comp. Laws § 380.1701 *et seq.* (Count IV). Due to widespread staffing shortages within HPS, these required services have effectively been halted.

Plaintiffs Y.A., W.A., and A.M., minor children, filed this putative class action lawsuit against Hamtramck Public Schools, Michigan Department of Education, and Wayne County Regional Education Service Agency ("WRESA"), who are all responsible for making sure HPS' disabled students receive adequate special education services (collectively referred to as "Defendants"). In the First Amended

Complaint, Plaintiffs allege in considerable detail the systemic nature of the Defendants' utter failure to in large part even *attempt* to provide any special education services. In the case of MDE, the First Amended Complaint makes clear that MDE wholly failed in its oversight and resource allocation roles.

MDE is Michigan's state educational agency ("SEA"). **Plaintiffs' First Amended Complaint, RE 46, Page ID # 539, 547.** MDE, through its Office of Special Education ("OSE"), is responsible for the general supervision, administration, and funding of special education programs and services for children and youth with disabilities ages 3 through 25.1 As Michigan's SEA, MDE bears the ultimate responsibility for ensuring that all public schools within the public school districts in Michigan comply with the IDEA. *Id.* 20 U.S.C. § 1412(a)(11)(A). WRESA is an intermediate school district ("ISD"), between MDE and HPS, with the responsibility to ensure that the federal, state, and local funds allocated to HPS by MDE are used to carry out special education programs and related services within its school districts and public academies. **RE 46, Page ID # 539.**

HPS and WRESA are considered local educational agencies ("LEAs"). **RE 46, Page ID # 546-547.** It is MDE's duty to ensure that the LEAs provide a free appropriate public education ("FAPE"), and have in effect policies, procedures, and programs that are consistent with the state policies and procedures established under the IDEA in providing for the education of children with disabilities. 20 U.S.C. §

1413(a)(1); 34 C.F.R. § 300.201. The State of Michigan has set forth the policies and procedures as required by the IDEA in Mich. Admin. Code R. 340.1701 et seq. *Id.* Accordingly, MDE is responsible for ensuring that the LEAs – Defendants HPS and WRESA – are monitored for implementation of, and compliance with, the IDEA. 34 C.F.R. § 300.600(a)(1). *Id.* If the state determines that the LEA is not in compliance, the state must take necessary action to enforce compliance. 34 C.F.R. §§ 300.600(a)(3), 300.608(a), 300.222(a). An assurance of compliance with this law is required by Mich. Admin. Code R. 340.1701a. *Id.*

Additionally, as a "program or activity" provider under Section 504 and a "public entity" under Title II of the ADA, MDE is obligated to ensure compliance with both Acts, which prohibit discrimination against students with disabilities. 29 U.S.C. § 794(b); 42 U.S.C. § 12132(1)(A). **RE 46, Page ID # 539.**

All Plaintiffs were continuously denied special services through the 2022-2023 school year, and A.M. through the 2023-2024 school year, which has lasting effects. **See RE 46.** As a result, Y.A. and W.A. enrolled in Dearborn Public Schools for the 2023-2024 school year. *Id.* Until November 2023, A.M. was placed in a classroom that violated her IEP. Defendants fail to prevent, correct, or remedy HPS' violations of the rights of Plaintiffs and all of those similarly situated. Defendants cannot continue to ignore one of Hamtramck's most vulnerable subgroups: disabled children.

## II. DISTRICT COURT POSTURE

By way of relevant procedural history, all Defendants moved to dismiss all of Plaintiffs' claims. Relevant to this appeal, the aforementioned motions to dismiss included Defendant-Appellant MDE's request to dismiss Plaintiffs' Count III pursuant to Fed. R. Civ. P. 12(b)(1). Specifically, MDE argued below that state immunity under the Eleventh Amendment bars Plaintiffs' claims under the ADA. Therefore, MDE argues that the district court does not have subject matter jurisdiction to hear Plaintiffs' Count III ADA claims. The district court denied these motions to dismiss, including the Eleventh Amendment/subject matter jurisdiction defenses. **Order RE 67, Page ID # 1352.**

## STANDARD OF REVIEW

Whether immunity exists in a given case is a question of constitutional law that this court reviews de novo. *S.J. v. Hamilton County*, 374 F.3d 416, 418 (6th Cir. 2004). Additionally, appellate review of a motion under Fed. R. Civ. P. 12(b)(1) is de novo. *Jones v. City of Lakeland, Tennessee*, 224 F.3d 518 (6th Cir. 2000).

## SUMMARY OF THE ARGUMENT

Although it did not consider the test in *United States v. Georgia*, 546 U.S. 151 (2006) *word for word*, the district court nonetheless went through a proper analysis in finding that the congressional abrogation exception to the Eleventh Amendment immunity applies to this case. Indeed, the district court cited to significant case law

abrogating Eleventh Amendment immunity in cases concerning public education, including a very similar case in the Eastern District of Michigan. See *D.R. v. Mich. Dep't of Educ.,* No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017).

The *Georgia Test* articulated three prongs in an Eleventh Amendment consideration: (1) which aspects of the state's alleged conduct violated Title II of the ADA; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment where Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Georgia*, 546 U.S. at 159.

First, Plaintiff sufficiently alleged facts demonstrating that MDE has failed to ensure that students in the state are receiving a Free Appropriate Public Education ("FAPE"). The district court considered and found this point. See **RE No. 67, Page ID # 1346-1347.** See **RE No. 46, Page ID # 553-555** which established the specific types of Title II discriminatory violations. Plaintiff also established the specific failures of the MDE with respect to these violations. **RE No. 46, Page ID # 592-595**. Here, the MDE actually found instances of violations committed against Plaintiffs. The MDE issued a correction plan but failed to monitor or enforce the same. *Id.* Thus, by identifying Title II discriminatory violations and failing to monitor and enforce its corrective action plans, MDE effectively allowed such violations to continue. Plaintiff sufficiently alleged Title II violations against MDE.

Second, while public education is infamously not a "right" granted to individuals by the Constitution (*San Antonio Independent School Dist. V. Rodriguez*, 411 U.S. 1 (1973), the conduct described in Plaintiffs' First Amended Complaint necessarily violates the Fourteenth Amendment equal protection and due process protections.

Third, insofar as Plaintiffs pled Title II violations but did not plead Fourteenth Amendment violations, MDE's immunity defenses still fail where such immunity is abrogated and does not apply to this case. Admittedly, the Sixth Circuit has not ruled on whether the Eleventh Amendment is abrogated in the context of public education. However, the Third Circuit agreed that "as applied to education, Title II is a congruent and proportional means of preventing and remedying the unconstitutional discrimination that Congress found to exist both in education and in other areas of governmental services, many of which implicate fundamental rights." *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 555 (3d Cir. 2007). The Third Circuit used this line of reasoning to conclude that Congress acted within its Constitutional authority in abrogating sovereign immunity by creating claims under Title II of the ADA. This Circuit should follow.

Regardless of whether the district court specifically considered these facts in such a specific manner, it still remains that all of the elements of the *Georgia* test are met. Most importantly, the district court properly considered abrogation of the

Eleventh Amendment immunity due to the facts and circumstances of this case and the plethora of persuasive authority from other circuits. Therefore, the district court's **Order RE No. 67** should be affirmed as to the instant Eleventh Amendment appeal.

## ARGUMENT

## I. THE DISTRICT COURT DID NOT ERR IN DENYING MDE'S ELEVENTH AMENDMENT ARGUMENT

Below, the district court conducted a proper analysis in finding that the MDE's immunity defense under the Eleventh Amendment has been abrogated. Nevertheless, Plaintiffs-Appellees assess the *Georgia* test to provide additional authority and support for the district court's **Order RE No. 67** denying MDE's Motion to Dismiss on the grounds of state sovereign immunity.

### A. MDE'S VIOLATIONS OF TITLE II OF THE ADA

As stated above, Plaintiffs sufficiently alleged facts demonstrating that MDE committed Title II violations under the ADA.

In **RE No. 46, Page ID # 553-555**, Plaintiff set forth types of Title II discriminatory violations. Plaintiff then described the specific Title II violations that occurred in this case. These violations were ironically identified by the MDE in its April 7, 2023 decisions against HPS. **RE No. 46, Page ID #592-593.** For example, the MDE found that HPS "failed to adopt the previous out-of-state district's IEP until a new one had been developed, and second, HPS failed to obtain Y.A.'s records from the previous school. *Id.* As alleged in **RE No. 46, Page ID #545-546**, a student's

individualized education program ("IEP") is an essential element to obtaining a FAPE. Such IEP's are integral, and statutorily required, for students that have disabilities. **RE No. 46, Page ID #548**.

After MDE found these violations, and others, MDE issued a correction plan for multiple students, but failed to monitor or enforce the same. **RE No. 46, Page ID #592-593**. Therefore, MDE violated Title II of the ADA and the same was sufficiently alleged by Plaintiffs.

In their Brief on Appeal, MDE blanketly asserts that the First Amended Complaint "simply failed to identify which aspects, if any, of MDE's alleged conduct violated Title II". **Appellant's Brief, Page 24.** They even argue that Plaintiffs did not point to any specific deficiencies in MDE's general supervisory system for IDEA compliance implicating Title II. *Id.* These arguments omit the allegations cited above. MDE wholly ignores the fact that Plaintiffs alleged failures to oversee and monitor specifically mentioned and cited corrective action plans.

## B. FOURTEENTH AMENDMENT VIOLATIONS

Although not explicitly stated, Plaintiff's First Amended Complaint presents MDE misconduct that is violative of the Fourteenth Amendment.

Although the *Rodriguez* case infamous held that public education is not a "right" granted to individuals by the Constitution, the Supreme Court in *Plyler v. Doe* offered considerable support for special consideration of educational rights. 457

U.S. 202 (1982). In *Plyler*, Justice Brennan found that public education is not merely some governmental "benefit" indistinguishable from other forms of social welfare legislation. *Id.* Both the importance of education in maintaining our basic institutions, and the lasting impact of its deprivation on the life of the child, mark the distinction. *Id.*

The "American people have always regarded education and [the] acquisition of knowledge as matters of supreme importance." *Id.* citing to *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923). We have recognized "the public schools as a most vital civic institution for the preservation of a democratic system of government," *Abington School District v. Schempp*, 374 U.S. 203, 230, 83 S.Ct. 1560, 1575, 10 L.Ed.2d 844 (1963) (BRENNAN, J., concurring), and as the primary vehicle for transmitting "the values on which our society rests." *Ambach v. Norwick*, 441 U.S. 68, 76, 99 S.Ct. 1589, 1594, 60 L.Ed.2d 49 (1979). "[A]s ... pointed out early in our history, ... some degree of education is necessary to prepare citizens to participate effectively and intelligently in our open political system if we are to preserve freedom and independence." *Wisconsin v. Yoder*, 406 U.S. 205, 221, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15 (1972). And these historic "perceptions of the public schools as inculcating fundamental values necessary to the maintenance of a democratic political system have been confirmed by the observations of social scientists." *Ambach v. Norwick, supra*, 411 U.S., at 77, 99 S.Ct., at 1594.

Justice Brennan wrote

"In sum, education has a fundamental role in maintaining the fabric of our society. We cannot ignore the significant social costs borne by our Nation when select groups are denied the means to absorb the values and skills upon which our social order rests. **In addition to the pivotal role of education in sustaining our political and cultural heritage, denial of education to some isolated group of children poses an affront to one of the goals of the Equal Protection Clause**: the abolition of governmental barriers presenting unreasonable obstacles to advancement on the basis of individual merit. Paradoxically, by depriving the children of any disfavored group of an education, we foreclose the means by which that group might raise the level of esteem in which it is held by the majority. But more directly, "education prepares individuals to be self-reliant and self-sufficient participants in society." *Wisconsin v. Yoder, supra*, 406 U.S., at 221, 92 S.Ct., at 1536. Illiteracy is an enduring disability. The inability to read and write will handicap the individual deprived of a basic education each and every day of his life."

*Plyler*, 457 U.S. at 222 (1982) (emphasis added).

Here, the MDE wishes to use the *Rodriguez* holding as such a governmental barrier that would affront the Equal Protection Clause of the Fourteenth Amendment, warned about by Justice Brennan. In this case, Plaintiffs are an isolated group of children who have been placed behind barrier after barrier for their FAPE. This constitutes one violation of the Fourteenth Amendment.

Plaintiffs' First Amended Complaint also described violations of due process protected by the due process clause of the Fourteenth Amendment[1]. Although not applied to Michigan law, the Supreme Court in *Goss v. Lopez* established the

---

[1] The arguments here also address the arguments of MDE in **Section D** of its **Appeal Brief.**

framework for due process violations related to matters of public education. 419 U.S. 565, 574 (1975). In *Goss*, students were found to have a property interest in their entitlement to a public education that cannot be taken away without adherence to the minimum procedures required by the Due Process Clause of the Fourteenth Amendment. *Id.* Granted, the *Goss* case was decided in the context of disciplinary actions. However, the *Goss* case established a fundamental baseline to allow the Sixth Circuit to find a similar property interest for the disabled Plaintiff students in this case.

As detailed above, this case involves a denial of Plaintiffs' property rights due to their disabilities. The Plaintiffs' complaints made to the MDE were left unresolved. The MDE completely failed in all capacities to uphold Plaintiffs' property interests in their entitlement to a public education. By precluding the students to access such baseline educational services, required by state and federal law, the MDE infringed on Plaintiffs' property rights and the Plaintiffs lost their right to a public education.

## C. ABROGATION OF ELEVENTH AMENDMENT IMMUNITY IS PROPER IN THIS CASE

Alternative to the second prong of the *Georgia* test, if it is found that the alleged misconduct violated Title II but not the Fourteenth Amendment, then it must be found that Congress properly abrogated sovereign immunity under the Eleventh

Amendment as to this specific class of misconduct alleged by Plaintiffs against the MDE.

In its **Order RE 67, Page ID # 1352**, the district court relied on *D.R. v. MDE* case in which another Eastern District of Michigan bench similarly rejected the MDE's similar Eleventh Amendment argument. Within the *D.R.* holding, the late Honorable Arthur J. Tarnow noted that the Sixth Circuit had not ruled on whether Congress had abrogated the Eleventh Amendment immunity to state actors in the context of public education. See *D.R. v. MDE, No. 16-13694, 2017 WL 4348818* at *8 (E.D. Mich. Sept. 29, 2017). However, other circuits found such abrogation. *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 555 (3d Cir. 2007); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005).

The district court found no reason to depart from Judge Tarnow's reliance on such "significant case law" to ultimately find that sovereign immunity under the Eleventh Amendment was abrogated by Congress by their enactment of Title II of the ADA. **RE 67, Page ID # 1352**. MDE's brief provides no counter-persuasive authority.

MDE simply states that the Sixth Circuit has not addressed this question of abrogation. But MDE offers no arguments in support or in opposition of the Sixth Circuit even considering these arguments. MDE similarly offered no arguments

against the First, Third, or Fourth Circuit's interpretation of Eleventh Amendment abrogation for cases involving public education. Indeed, the question of abrogation is integral to this case. If the Sixth Circuit adopts the district court's, Judge Tarnow's, and the First, Third, and Fourth Circuit's abrogation principles, then it will have settled a previously unanswered question of law.

In following such strength of persuasive authority, this Circuit Court should adopt the holdings of the First, Third, and Fourth circuits as cited above.

## CONCLUSION

For the reasons set forth above, Plaintiffs-Appellants ask this Court to AFFIRM the district court's **ORDER RE 67** denying MDE's Motion to Dismiss as to Count III of the First Amended Complaint.

Respectfully submitted,

HAMMOUD, DAKHLALLAH
& ASSOCIATES, PLLC
By: */s/ Kassem M. Dakhlallah*
Kassem M. Dakhlallah (P70842)
Tarik D. Turfe (P83690)
Counsel for Plaintiffs
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038

Dated: January 10, 2025          kd@hdalawgroup.com

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,979 words according to the word count function of Microsoft Word.

I certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed R. App. P. (32(a)(6) because this document has been prepared using Microsoft Word in 14-Point Times New Roman font.

Respectfully submitted,

By: */s/ Kassem M. Dakhlallah*
Kassem M. Dakhlallah (P70842)
Counsel Plaintiffs
Dated: January 10, 2025    kd@hdalawgroup.com


**CERTIFICATE OF SERVICE**

I certify that on January 10, 2025, a true and accurate copy of the foregoing petition response was electronically filed with the Court's CM/ECF Electronic Filing System and served upon all parties' counsel of record through the CM/ECF system

Respectfully submitted,

By: */s/ Kassem M. Dakhlallah*
Kassem M. Dakhlallah (P70842)
Counsel Plaintiffs
Dated: January 10, 2025    kd@hdalawgroup.com

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Plaintiffs-Appellees, pursuant to Sixth Circuit Rule 28 and Rule 30, hereby designate the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Amended Class Action Complaint | 1/23/24 | R. 46 | PageID#527–699 |
| Defendant MDE's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint | 2/14/24 | R. 49 | PageID#703–777 |
| Defendant HPS's Renewed Motion to Dismiss | 2/14/24 | R. 51 | PageID#780–819 |
| Defendant WRESA's Renewed Motion to Dismiss | 2/14/24 | R. 52 | PageID#933–963 |
| Plaintiffs' Response to MDE's Renewed Motion to Dismiss | 3/6/24 | R. 55 | PageID.1001–1040 |
| Opinion and Order Denying Motions | 9/24/24 | R. 67 | PageID#1326–1358 |

| | | | |
|---|---|---|---|
| to Dismiss ("MTD Order") | | | |
| Defendant MDE's Notice of Appeal | 10/2/24 | R. 69 | PageID#1363–1366 |
| Defendant MDE's Motion to Certify | 10/4/24 | R. 71 | PageID#1368–1394 |
| Defendant MDE's Motion to Stay | 10/7/24 | R. 73 | PageID#1457 |